DRUESDOW et al. v. BAKER et al.
(No. 202–3272.)

(Commission of Appeals of Texas, Section A. March 23, 1921.)

**1. Taxation ⬳446 — Decisions of State Tax Board under intangible assets act quasi judicial.**

The decisions of the State Tax Board under Rev. St. 1911, arts. 7407–7426, commonly known as the Intangible Assets Act, in the matter of valuations, are quasi judicial in their nature, and a collateral attack cannot be justified in the absence of fraud, or something equivalent thereto, as lack of jurisdiction, an obvious violation of the law, or the adoption of a fundamentally wrong principle or method the application of which substantially injures complainant; mere difference of opinion as to the reasonableness of valuation, etc., not warranting interference by the courts.

**2. Taxation ⬳611(6)—Evidence held to support finding State Tax Board in valuing railroad's intangibles acted in good faith.**

In suit by a railroad's receivers to restrain the collection of taxes assessed against the road on the value of its intangibles under Intangible Assets Act (Rev. St. 1911, arts. 7407–7426), evidence *held* to support the trial court's finding that in making the valuation complained of the State Tax Board acted in good faith and that the valuations were not affected by fraud, bad faith, or other improper motives.

**3. Taxation ⬳611(6)—Evidence held to warrant finding of State Tax Board fixing value of road's tangibles and intangibles.**

In suit by a railroad's receivers to restrain the collection of taxes as assessed against the road on the value of its intangibles under Intangible Assets Act (Rev. St. 1911, arts. 7407–7426), evidence *held* to warrant the finding of the State Tax Board in fixing the value of the railroad's tangibles and intangibles.

**4. Taxation ⬳611(6) — That railroad is in hands of receivers not conclusive of nonexistence of intangible assets.**

That a railroad, through its inability to meet interest payments, has been placed in the hands of receivers pending foreclosure, is not conclusive evidence of the nonexistence of intangible values belonging to such railroad and taxable under Intangible Assets Act (Rev. St. 1911, arts. 7407–7426).

**5. Taxation ⬳47(4)—Intangible Assets Act does not authorize double taxation.**

The Intangible Assets Act (Rev. St. 1911, arts. 7407–7426) neither requires nor authorizes double taxation of the intangibles of a railroad.

**6. Constitutional law ⬳229(3)—Taxation ⬳40(8), 608(5)—Collection of tax based on assessment of intangibles at higher proportionate value than other property restrained as lacking uniformity and as denying equal protection.**

Where tangibles, including the tangibles of railway companies in a county, are, as a result of settled practice or custom, systematically assessed below their true value, and the intangibles of the railroads assessed at their true value, a railroad against which such actual value is assessed is entitled to enjoin the collection of so much of the tax against it as was based on the assessment of its intangibles at a higher proportionate value than that of other property within the state on the ground such assessment is in violation of Const. art. 8, § 1, requiring uniform and equal taxation, and Const. U. S. Amend. 14, § 1, guaranteeing equal protection of the law.

**7. Taxation ⬳608(5)—Where under valuation of road's tangibles equalizes overvaluation of intangible, road not entitled to relief.**

If the intangible assets of a railroad company are assessed at their true full value and its tangible assets at less than their true value and below the value of the tangible property generally of the county, and such overvaluation of intangibles is equalized by the undervaluation of tangibles whereby the road is called on to pay no more than others, it is not entitled to equitable relief because one class of its property is valued above another.

**8. Taxation ⬳611(6½)—Finding of no discrimination against railroad in assessment of intangibles proper in view of other findings.**

In suit by a railroad's receivers to restrain collection of taxes on the value of intangibles under Intangible Assets Act (Rev. St. 1911, arts. 7407–7426), where the trial court found that the tangible properties of the road in the county had been assessed at less than one-half value, and that the intangible values apportioned to the county were $600,000, making the total some $3,800,000, which were assessed at about 45 per cent., and that the total properties of the railroad in the county were assessed at less than 50 per cent. of their value, while other property was assessed at least 50 per cent., the further finding that there had been

no discrimination against the railroad and in favor of taxpayers generally was proper, as was determination that there was no discrimination and consequent violation of the uniformity and equality taxation clause of the Constitution with reference to taxation.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by James A. Baker and others, as receivers, etc., against Karl L. Druesdow and others, wherein defendant Druesdow brought cross-action. From judgment for such defendant, plaintiffs appealed to the Court of Civil Appeals, which reversed and rendered judgment in favor of plaintiffs (197 S. W. 1043), and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of the trial court affirmed.

B. F. Looney, Atty. Gen., Luther Nickels, Asst. Atty. Gen., Fisher, Campbell & Amerman, and Sewall Myer, all of Houston, for plaintiffs in error.

Wilson, Dabney & King, of Houston, for defendants in error.

SPENCER, J. This suit was instituted by plaintiffs as receivers of the International & Great Northern Railway Company, hereinafter referred to as railway company, against defendants, the tax collector, county judge, and county commissioners of Harris county, to restrain the collection of taxes assessed against the railway company for the year 1915 upon the value of its intangible property, as found by the State Tax Board, and apportioned by the board to Harris county.

In the district court, plaintiffs were denied relief, and judgment was rendered in favor of Druesdow, tax collector, on his cross-action for the amount of the tax with interest. On appeal the judgment of the district court was reversed, and judgment rendered in favor of plaintiffs granting an injunction restraining the collection of the taxes. 197 S. W. 1043.

The Act of the Twenty-Ninth Legislature, approved April 17, 1905 (Laws 1905, c. 146), as amended in 1907 (Laws 1907 [1st Call. Sess.] c. 17), constituting title 126, c. 4, arts. 7407 to 7426, inclusive, Revised Civil Statutes 1911, and commonly known as the "Intangible Assets Act," created a State Tax Board composed of the Comptroller of Public Accounts, the Secretary of State, and the Tax Commissioner of the State, the latter to be appointed by the Governor.

The act provides that certain enumerated corporations, including railroad companies, doing business within the state, shall pay, in addition to the ad valorem taxes on tangible properties, an annual tax to the state on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on.

In order to assist the Board in arriving at the intangible values, the corporation coming within the scope of the act, is required to deliver to the Tax Commissioner, for the information of the Board, a statement duly verified by affidavit, showing, among other things, the market value of the outstanding stock, or if no market value, the actual value thereof; the assessed value, and also the true value of its tangible property; each and every existing lien, mortgage, or other charge upon the whole or any part of its property, and the amount of unpaid debt secured by each such mortgage or lien, including the unpaid interest thereon and the true market value of every such debt; the gross receipts and net income and earning from all sources for the next preceding twelve months, and the amount used for repairs, betterments, and extensions. Articles 7415 and 7416, Revised Civil Statutes 1911.

If, upon examination, the Board shall deem the statement insufficient, or shall believe further information necessary, it may demand such additional information as it may deem necessary and may hear evidence, to enable it to make a preliminary estimate of the intangible. With the information thus before it, it is required to make a preliminary estimate of the value of intangibles of the corporation, and on or before the 31st day of May to notify the corporation, whose property is sought to be taxed, of such preliminary estimate; and the corporation shall have 15 days from the time of mailing the notice in which to appear before the Board, on a date to be fixed by the notice, to contest the preliminary estimate. Upon or after the hearing, the Board may make such changes as it may deem just and proper. Articles 7418 and 7419, Revised Civil Statutes 1911.

The act then provides:

"In apportioning the value of the aforesaid properties, said State Tax Board shall have the right and it shall be its duty to make use of and consider all evidence which may be put before it and all material facts at its command; and, if it shall believe that some method of calculation other than that specifically prescribed in this chapter is necessary in order to produce just and lawful results, said Board shall follow that method of calculation which it believes best calculated, under all circumstances, to bring about a just, fair, equitable and lawful valuation and apportionment of such property." Article 7420.

The Board fixed the preliminary valuations of the entire property, and of the intangible property for the year 1915, giving the railway company the required notice, and set the hearing for the 18th day of June, 1915.

Prior to the hearing, the Tax Commissioner, at the request of the railway company, exhibited certain formulas by which the calculations, as to values, were made. An error appearing upon the face of the formula prepared for valuations of the railway company, was called to the attention of the Tax Commissioner, whereupon the figures were amend-

ed, and the railway company notified of the amended preliminary valuations.

Under the preliminary estimate, the true value of the entire property was fixed at $39,116,033; the physical at $28,372,810; and the intangibles at $10,743,223. From the formula, it appeared that the capital stock issued and outstanding amounted to $4,822,000; the mortgage debt at par $26,181,500.

At the hearing upon the date fixed, the railway company introduced evidence which may be summarized as follows: Valuation of tangible, $32,471,027; betterments made since such valuation, the cost of which added to the valuation made a total of $34,013,092.07; net income for 1912, $2,084,149.50; for 1913, $1,155,660.92; and for 1914, $65,405.21; outstanding capital stock and lien indebtedness, the same as that used by the board in its formula.

Upon the conclusion of the hearing, the board adhered to its preliminary valuations and upon a mileage basis apportioned to Harris county $603,227 of the amount of intangibles so found, which at the rate of taxation applied by Harris county, state and county, amounted to $6,605.34.

Plaintiff contends that the Intangible Asset Act is unconstitutional, being in violation of the Constitution of the state of Texas, and also of section 1 of the Fourteenth Amendment to the Constitution of the United States; that in fact it had no intangible property; that, if in fact it had intangibles, the same were, by the use of a fundamentally false formula and method which no reasonable mind could in good faith follow, grossly and arbitrarily overvalued, resulting in discrimination against it and in favor of competing roads; and that whatever motive prompted the Board, its acts constituted fraud in law.

[1] The decisions of the Tax Board in the matter of valuations are quasi judicial in their nature. This action is therefore a collateral attack upon the judgment of a quasi judicial tribunal. Such an attack cannot be justified in the absence of fraud, or something equivalent thereto; lack of jurisdiction; an obvious violation of the law, or the adoption of a fundamentally wrong principle or method, the application of which substantially injures complainant. No mere difference of opinion, as to the reasonableness of its valuation, when such valuations, though deemed erroneous, are the result of honest judgment, will warrant interference by the courts. Pittsburgh, C., C. & St. L. R. Co. v. Backus, 154 U. S. 434, 14 Sup. Ct. 1114, 38 L. Ed. 1039; Western Union Telegraph Co. v. Taggart, 163 U. S. 30, 16 Sup. Ct. 1054, 41 L. Ed. 49.

The formulas, which the railway company attacked as fundamentally wrong, were used as the bases for the preliminary estimate or valuation. These formulas were exhibited to the representatives of the railway company prior to the hearing and were the subject of discussion at the hearing. The process used by the Board in reaching its preliminary valuation is wholly immaterial, the ultimate conclusions or final valuations being the matters under investigation; and unless it be shown that the method used brought about unjust and unlawful results, its judgment will not be disturbed.

[2] The evidence by the Tax Commissioner is to the effect that the Board, in assessing intangibles of all railroads, considered all the evidence and information, and that, disregarding the mathematical calculation, the valuation finally determined represented in each instance the best judgment of which the Board was capable under the circumstances; that the Board withheld its decision in each instance until the evidence was all in, and if the formula did not reflect what the Board considered a fair and just valuation, the Board changed it.

From this and other evidence of the same character, supporting the finding of the trial court, that in making the valuation complained of the Board acted in good faith and that there was no evidence that the Board acted arbitrarily or that the valuations were brought about or affected by fraud, bad faith, or other improper motives, but shows that such valuation reflects their best and honest judgment, its judgment should be upheld.

[3] It is urged that if the value of the entire property was as fixed by the Board, the physical property was undervalued, resulting in a gross overvaluation of the intangibles.

The railway company, by the terms of the act, is required to report annually to the Tax Board both the assessed and actual value of its tangible property. In its statement to the Board for the year 1915, it reported the assessed value of its tangibles, including rolling stock, at $16,168,906, and the actual value of all the tangible property (except rolling stock) to be the sum of $26,026,810.78. The actual value of rolling stock does not seem to have been reported, but its assessed value, as shown by the railway company's report, was $2,168,906.

On the hearing before the Board, subsequent to the preliminary valuations, as well as upon the trial of this case, a witness for plaintiffs testified to the inaccuracy of the report of the actual value of the tangible property and explained the cause for the mistake, testifying that the actual value of the tangibles was $34,013,092.07. The Board in fixing the preliminary valuations valued the tangibles at $28,372,810, and adhered to this value after the hearing.

In view of the above-stated facts, there is warrant for the finding of the Board. In reaching this conclusion, it is not necessary to apply the rule invoked by defendants that the railway company is bound by the statement of actual values in its report to the Board. It may be conceded that such report,

the result of mistake, is subject to correction upon the hearing before the Board. The Board is not, however, bound to accept as true the evidence adduced to show mistake. It was for the Board, in fixing the value, to consider the statements of assessed and actual values in the report; the evidence with reference thereto; and, in connection therewith, all other data and information at hand.

A valuation far in excess of the value placed thereon by the railway company for assessment purposes in the various counties, equal to the statement of actual value in its sworn report to the Board, and in excess of the value of the entire property under the net earnings rule, contended for by plaintiffs, can hardly be deemed an arbitrary and unreasonable undervaluation.

[4] It is insisted that because the railway, through its inability to meet interest payments, has been placed in the hands of receivers pending foreclosure, it has no intangible property. This may be persuasive, but is by no means conclusive evidence of the nonexistence of intangible values. Such a question was raised in the Supreme Court of the United States upon a statement of facts somewhat similar to the facts of this case, and that court held that a corporation may be subject to the payment of a tax on intangibles, even though the capital stock is sunk and of no value and the company utterly bankrupt. State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663.

In this connection, it may be remarked that an active receivership is a recognition of the existence of intangibles. The receivers herein were appointed, not only or mainly to take into their custody and control, the physical property with a view to its preservation pending foreclosure, but they are charged with the duty of operating the road, and authorized to exercise all the rights and privileges incident and pertaining to operation. They are to keep intact the organization and continue in force traffic and other agreements and trackage rights—in a word, to conserve these and other intangibles which give life, vitality, and increased value to tangibles.

Plaintiffs contend that the act is violative of section 1 of the Fourteenth Amendment to the Constitutiton of the United States, and various provisions of the Constitution of this state. With but one exception, to be presently discussed, all the objections raised were considered in Missouri, Kansas & Texas Railway Co. of Texas v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; and decided adversely to plaintiffs' contention.

[5] Subsequent to the decision of the Shannon Case, the act was amended in several particulars. It is urged by plaintiffs that, as amended, the act requires and authorizes a double taxation of intangibles, and thereby it is rendered unconstitutional.

Section 1 of the Act of 1905 provided that—

"Every individual or association of individuals doing such business shall in addition to the ad valorem taxes on tangible properties which are now imposed upon them by law, annually * * * pay a tax * * * on their unrendered intangible assets and property, and local taxes thereon to the counties in which its business is * * * carried on."

This section, as amended in 1907, provides that those within the act, "in addition to the ad valorem taxes on intangible properties which are * * * or * * * may * * * be imposed upon them," shall pay an annual "tax to the state * * * each year * * * on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on." Section 8.

The objection urged is that, under the original act in addition to the tax upon tangibles, a tax was required upon unrendered intangibles. Under the act as amended, the tax required is in addition to the tax imposed upon intangibles, and upon all intangibles, rendered or unrendered, the word "unrendered" before intangibles in the original act being omitted in the amended act; that intangibles can, under the general law, be rendered in the several counties through which the railroad is operated, and, though thus rendered and taxed, are again assessed in such counties in accordance with the values fixed by the State Tax Board, and thereby doubly taxed.

The Court of Civil Appeals held that the word "intangible," where it first appears in the section of the amendment above quoted, was a clerical error; it being the manifest intention of the Legislature to there use the word "tangible." We concur in this conclusion.

Prior to the passage of the act, intangibles were required to be rendered and assessed as a part of the tangibles in the several counties. State v. Austin & N. W. Ry. Co., 94 Tex. 530, 62 S. W. 1050. Under the act, the valuation and apportionment of the intangible assets are within the exclusive jurisdiction of the State Tax Board. Such valuations and apportionments are certified by the Board to the county assessors, who are required by the act to list the intangibles upon the tax rolls in accordance with the findings of the Board. The act does not deal alone with valuations and apportionments, but provides a complete system or scheme of assessment.

Under the original act, the additional tax was to be imposed only upon the "unrendered intangibles." From this an inference may have arisen—very slight, however, in view of the other provisions of the act—that only intangibles unrendered in the counties were within the act. The omission in the amended act of the word "unrendered" before the word "intangible" destroys even this slight inference and makes clear and certain that the intangibles of a railway company can be assessed only in the manner provided in the

act, that is, upon the certified valuations and apportionments of the State Tax Board. The physicals are taxed under the general law, the intangibles under this act. The act distinctly and unmistakably so provides in the following language:

"All state and county ad valorem taxes upon all intangible property in this state belonging to any individual, company, corporation or association embraced by this act, shall be assessed under its provisions and not otherwise; but ad valorem taxes upon all other property of any and all such individuals, companies, corporations and associations shall be assessed as is now or as may hereafter be provided by law." Laws 1907 (1st Call. Sess.) c. 17, § 16.

It is manifest that the act neither requires nor authorizes double taxation of intangibles.

[6-8] Another contention of plaintiff is that there was a discrimination against them and a consequent violation of the uniformity and equality clauses of the Constitution with reference to taxation, in this: that there existed a scheme and custom in Harris county, Tex., participated in by defendants, to assess other tangibles in the county at not over 38 per cent. of their actual value, while the intangible property of the railway company was assessed at its full value, as found by the State Board. The answer of defendants was that, as the whole of plaintiff's property, taxable in Harris county, had not been valued for taxation at a greater proportion of its value than the other property in the county, therefore plaintiff was not entitled to any equitable relief.

It has been definitely decided in this state that where tangibles, including the tangibles of railway companies, in a county, are, as a result of a settled practice or custom systematically assessed below their true value, and the intangibles of the railway companies assessed at their true value, the railway company against which such actual value is assessed is entitled to enjoin the collection of so much of the tax against it as was based upon the assessment of its intangibles at a higher proportionate value than that of other property within the state, upon the ground that such assessment is in violation of section 1, art. 8, of the state Constitution, requiring equal and uniform taxation, and in violation of section 1 of the Fourteenth Amendment to the federal Constitution, guaranteeing equal protection of the law. Lively v. M. K. & T. Ry. Co. of Texas, 102 Tex. 545, 120 S. W. 852.

It is equally well settled that if the intangible assets of a railway company are assessed at their full value and its tangible assets at less than their true value and below the value of the tangible property generally of the county, and such overvaluation of intangibles is equalized by the undervaluation of tangibles, as a result of which it is called upon to pay no more than others, it is not

229 S.W.—32

entitled to equitable relief because one class of its property is valued above another. M., K. & T. Ry. Co. v. Hassell et al., 57 Tex. Civ. App. 522, 123 S. W. 190. Writ of error denied.

The court found from the evidence that the tangible properties of the railway company in Harris county on January 1, 1915, subject to taxation, was of the value of $3,205,202.09; that this property was rendered and assessed at the valuation of $1,106,105; that the intangible values apportioned to Harris county were $603,227.44, making the total taxable values $3,809,379, which were assessed at $1,709,332, or about 45 per cent. of their values, and that the total properties of the railway company in Harris county—tangible rolling stock, and intangibles—were assessed at less than 50 per cent. of their value, while other property in the county was assessed at least 50 per cent. of its true value.

Under these findings of the court, which are supported by evidence, the railway company is not entitled to the relief sought. It cannot be heard to say in an equitable proceeding of this sort that the undervaluation of its tangibles by the Board of Equalization is conclusive and cannot be considered in determining whether there has been a discrimination against it, in violation of the uniformity and equality taxation clause of the Constitution.

The Constitution simply guarantees uniformity and equality of taxation. It does not purport to deal with the mode or manner of accomplishing this purpose, but its mandate has been satisfied when uniformity and equality of taxation has been attained. Though the Board of Equalization and State Tax Board are wholly independent of each other in their respective orbits of operation, their judgments with respect to the violation vel non of the constitutional provision are interrelated; and where, as in this case, a violation of the provision is based upon the ground that intangibles have, as compared to tangibles generally, been overassessed, and the countercharge is made that the tangible of the complainants have, because of reliance upon a sworn statement filed by the complainant with the board assessing tangibles, been under assessed, it is proper to consider the action of both boards in determining the issue. This the trial court did and as a result found that there had been no discrimination against the railway company and in favor of the taxpayers generally, and this finding we approve.

We recommend, therefore, that the judgment of the Court of Civil Appeals be reversed, and that of the trial court be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.