MALLET LAND & CATTLE CO., Inc., v.
STATE et al.
No. 4424.

Court of Civil Appeals of Texas. Amarillo.
May 20, 1935.

Rehearing Denied June 24, 1935.

E. L. Klett, of Lubbock, for appellant.

Vickers, Campbell & Evans, of Lubbock, and Carl Ratliff, of Levelland, for appellees.

HALL, Chief Justice.

This suit was instituted by the state of Texas and Hockley county against the appellant cattle company, a nonresident corporation, to recover taxes for the years 1932 and 1933 alleged to be delinquent in approximately the sum of $15,000, including interest, penalties, and costs. The plaintiffs further sought to foreclose the tax lien upon approximately 38,000 acres of land situated mainly in the southwest part of Hockley county.

The substance of the appellant's answer is that its lands were unimproved, dry grazing lands which it rendered for taxes

at $8 per acre and less, according to their true value during each of said years. That the county board of equalization wrongfully and illegally increased the values more than $2 per acre above said rendition, and over defendant's protests, and said board adopted and applied as against the defendant a plan for appraising its lands at a higher percentage of value than the property of others in said county, in violation of the provisions of the Constitution and laws of the state, resulting in an illegal assessment in excess of $100,000 for each of said years, and the levy of an illegal tax of more than $5,000. It is further alleged that said lands, after the values were increased by the board, were listed on the tax rolls of the county for the purpose of showing liability for the taxes as alleged by plaintiffs in the amount sued for and which was illegal and contrary to the Constitution and statutes of the state. That the board of equalization did not classify said lands as required by law, and in fact did not classify them at all into second, third, and fourth classes. That defendant rendered the land at full value and the board increased said values above the real and market values given by the defendant. That during the years 1932 and 1933 the board pursued and adopted as to this nonresident corporation defendant a fraudulent, arbitrary, and illegal method of assessing defendant's taxes, and adopted a plan and scheme to assess defendant's property for said years at more than its true value, while assessing other property in the county, belonging to other owners, at less than its true value. That other lands in the county, belonging to other owners, were assessed by the board for each of said years at less than 25 per cent. of their true value. That said lands of other owners were of the value of $30 to $40 per acre, and were assessed by the board at only $10 per acre. That there were at least 2,000 labors of improved agricultural land with valuable improvements thereon, worth from $1,000 to $5,000 per tract, and that said board exempted said improvements from taxation and refused to assess them. That the board assessed brick buildings at less than 25 per cent. of their true value by arbitrarily placing a value of $2,000 on a brick building in a city, which building was worth from $8,000 to $10,000. They arbitrarily assessed merchandise in the various cities of the county at 60 per cent. of its true value, and arbitrarily exempted minerals and mineral property, deeds, leases, and royalties from taxation. That it placed an arbitrary price of $10 per head on cattle, $5 per head on sheep, and also affixed a value on horses, without regard to the true value of the same, arbitrarily decided not to take into consideration the value, quality, location, or use of the lands in the county. That it arbitrarily appraised unimproved grazing lands at the same price it had appraised improved agricultural lands of much greater value. It arbitrarily discriminated in favor of the residents of Hockley county in favor of nonresidents by placing a higher value on property of said nonresidents. That it discriminated against large landowners and corporations such as defendant by assessing its lands at full value while allowing the real estate of other owners to be assessed at 25 per cent. of its value. That it refused to follow a plan of making the taxation equal and uniform as to all property in the county, and its policy discriminated against the defendant and in favor of owners of other property in the county, and such illegal action resulted in defendant's property being assessed for each year at $100,000 more than it should be assessed, and if the board had followed the plan as stated by the Constitution and laws, the amount of its taxes would have been $10,000 less.

In response to special issues the jury found that the board of equalization did not appraise defendant's lands in excess of their true value for the years 1932 and 1933. That the true value per acre of defendant's lands on January 1st of each year was $30 per acre. That the defendant's tracts of land were not of less value per acre than the improved tracts of similar lands belonging to others in the county during said years. That the board did not appraise the improved agricultural lands in said county without taking into consideration the value of the improvements thereon for the years 1932 and 1933. That the appellant's lands for said years were valued on substantially the same pro rata basis as to their true value as were other lands and properties in said county for said years.

Judgment was rendered in favor of the state and county in the sum of $15,154.24, and decreeing a foreclosure of the tax lien upon said lands.

Appellant's first proposition in substance is that where a nonresident cor-

poration renders its unimproved, dry grazing ranch lands at less than $10 per acre and the board of equalization, acting under a scheme adopted by it, raised the valuation of the lands and placed them in the same class with 2,000 improved and more valuable agricultural labors of land belonging to others, and appraised all of said lands at $10 per acre, without taking into consideration the value of the improvements on said agricultural lands of others worth $40 per acre, and improvements thereon worth from $1,000 to $5,000 per each labor, such action of the board in taxing the defendant's property at a higher percentage of its value than that of others was illegal, unconstitutional, and void.

The trouble with this proposition is the assumption that the appellant's lands were unimproved. The petition describes the land as unimproved and the case was tried upon that theory. R. S. art. 7206, subd. 3, provides that the board of equalization shall equalize improved lands in three classes, the first class to embrace the better quality of lands and improvements, the second class to embrace the second quality of lands and improvements, and the third class to embrace lands of small value or inferior improvements. It further provides that unimproved lands shall also be divided into three classes.

■ The record shows without contradiction that the appellant's ranch, lying partly in Hockley ·county and extending into Cochran and Yoakum counties, was fenced with a substantial five-wire fence; that the headquarters consisting of a house, barn, and other minor improvements were on that part of the ranch lying in Hockley county; that the 38,000 acres in that county had several cross-fences constructed of substantial posts and five wires, dividing the Hockley county lands into lots of four or five sections each, upon which was situated some twelve to fifteen large windmills and valuable water tanks.

" 'Improved' land, when applied to real estate, is not a technical word having a precise legal meaning. The term may be employed to designate land that is occupied or made better by care or cultivation or which is employed for advantage. It is generally understood to be such land as has been reclaimed for use for the purpose of husbandry and is cultivated as such, whether the appropriation is for tillage, meadow or pasture." 31 C. J. 361.

The Supreme Court of Alabama, in Johnson v. Frederick, 163 Ala. 455, 50 So. 910, held that land inclosed with a wire fence consisting of poles with four strands of wire attached thereto and used for a pasture was "improved" land. We approve that holding.

This record fails to show that Hockley county has any unimproved land in it. The preliminary statement in the briefs is that the entire county was at one time composed of several large ranches. The basis of these ranches is shown to have been leagues and labors of land which had been surveyed by the state for Atascosa, Concho, Edwards, Scurry, and other counties as county school lands, and had been purchased from such counties by individuals and converted into ranches, with the usual·and customary improvements.

■ We are inclined to the opinion that subdivision 3 of article 7206, requiring boards of equalization to classify lands is mandatory. Republic Ins. Co. v. Highland Park I. S. D. (Tex. Civ. App.) 57 S. W.(2d) 627; Vance v. Town of Pleasanton (Tex. Civ. App.) 261 S. W. 457; Town of Pleasanton v. Vance (Tex. Com. App.) 277 S. W. 89; 2 Cooley on Taxation (4th Ed.) §§ 510, 511; 26 R. C. L. 355. The statute does not require boards of equalization, in classifying lands for the purpose of equalizing values, to consider whether the lands are actually being cultivated or not, but the fact of cultivation and their fitness for farming are elements which the board may consider in estimating value. The duty rested upon the board of equalization in this case to consider the 38,000 acres as improved lands, and to value each tract together with the improvements on it, and equalizing such values by comparing them with the lands and improvements of the same class of lands belonging to others in the county, similarly located with reference to market, schools, etc. The record shows this has not been done, and the result is unjust discrimination. ·

■ The record shows that part of the ranch contains several kinds of land which, of course, should have been valued accordingly. There is testimony that a considerable portion of the 38,000 acres lying in the extreme southwestern corner of Hockley county is very sandy, so much so that it is not adapted to cultivation, while other portions nearer the county seat may be properly classed with the

best lands in the county susceptible to agriculture at the option of the owner. In fixing a uniform value of $10 per acre, the commissioners' court seems to have disregarded the difference in the quality of these portions of the ranch.

■ By a subsequent proposition the appellant contends that the record shows an utter disregard by the board of equalization of the kind, quality, and value of the improvements. We think the statute referred to required the board to take into consideration not only the quality of the land improved, but the value of the improvements also. While the county judge and several of the commissioners testified that in fixing values they "took into consideration the value of the improvements," several of them testified that when the sod was broken and the land converted from pasture to farm lands, the damage caused by wind erosion was sufficient to offset the increased value resulting from the construction of dwellings, barns, fences, windmills, etc., and it seems without regard to the extent or value of the improvements. And the jury seems to have accepted that testimony as true, although no particular farms nor the value of any specific improvements were mentioned. The testimony shows that the values of improvements varied and in some instances were as much as $4,000. Such testimony is too uncertain to support a finding so material. Reagan Round Bale Co. v. Dickson Car Wheel Co., 55 Tex. Civ. App. 509, 121 S. W. 526.

In view of the fact that the population of the county is steadily increasing from year to year and land values are rising, this court is not willing to indorse the broad, general statement that the increase in value incident to the erection of a dwelling, windmill, and the necessary outhouses and fences to establish a home for a family upon lands that originally were unsettled, · wild prairie lands, has been more than offset by wind erosion following the breaking of the sod. It would be tantamount to a declaration that the ·more than 2,000 farmers and stockmen who have settled in that county, established their homes, built churches, school houses, gins, and the other evidences of a thriving civilization, should obliterate their improvements, abandon the county, and let it revert to what it formerly was—the home of coyotes, prairie dogs, jack rabbits, and Comanche Indians.

■ It is common knowledge that recent and unusual dust storms have caused erosion in many farms, and brought us millions of acres of migratory real estate from Kansas, Nebraska, and other northern states (and which returned when the wind veered to the south), but we are too optimistic to believe that that condition has materially reduced land values to the extent ·of the cost of even the most unpretentious homes, at least until more certain and definite proof is made. The effect of this testimony is to show that the values of the improvements have not been given the consideration which the statute requires.

■ The appellant requested the court to submit numerous special issues, which the court refused, and they were each made the basis of an assignment of error and proposition. These issues assume that appellant's lands were unimproved and, of course, present questions which are foreign to the case, and the court did not err in refusing them.

We deem it unnecessary to discuss the remaining propositions in detail, and because of the errors pointed out, the judgment is reversed and the cause remanded.