THE STATE OF TEXAS ET AL. V. MALLET LAND & CATTLE COMPANY, INCORPORATED.

No. 6977. Decided December 4, 1935.
Rehearing overruled January 8, 1936.
(88 S. W., 2d Series, 471.)

*Carl Ratliff,* of Levelland, and *Vickers, Campbell & Evans,* of Lubbock, for plaintiffs in error.

Plaintiffs' pleadings and the judgment of the court having established a tax lien upon the land in controversy, and there being no defensive pleadings or evidence attacking the validity of same, the judgment of foreclosure should stand. Jackson v. Watson, 10 S. W. (2d) 977; Davis v. West, 5 S. W. (2d) 870; Richey v. Moor, 112 Texas, 493, 249 S. W., 172.

There was no discrimination in the assessment. Lubbock Hotel Co. v. Lubbock Ind. Sch. Dist., 85 S. W. (2d) 776; 61 C. J., 105; 26 R. C. L., 247.

*E. L. Klett,* of Lubbock, for defendant in error.

On question of discrimination. Lively v. Missouri, K. & T. Ry. Co., 102 Texas, 545, 120 S. W., 852; Slaughter v. Sundown Ind. Sch. Dist., 41 S. W. (2d) 478; City of West University Place v. Home Mortgage Co., 72 S. W. (2d) 361.

MR. JUSTICE SHARP delivered the opinion of the court.

The State of Texas and Hockley County recovered judgment against Mallet Land & Cattle Company, Inc., a nonresident corporation, for the sum of $15,154.24, and a tax lien upon approximately 38,000 acres of land situated in Hockley County was foreclosed. The Court of Civil Appeals at Amarillo reversed and remanded the cause. 84 S. W. (2d) 260. A writ of error was granted.

The plaintiffs in error will be designated as the State, and the defendant in error as the Cattle Company. The Cattle Company contends that its property in Hockley County was illegally assessed, and that the values placed thereon for taxation by the taxing authorities were not equal and uniform, as compared to the value placed on other property, and were discriminatory against the Cattle Company. The State's petition alleged taxes due upon each of the several tracts of land owned

by the Cattle Company for the years 1932 and 1933. The delinquent tax records and the assessment rolls show that the taxes were assessed separately against the various tracts of land. It is shown that 98% of the land in Hockley County is subject to cultivation. It is also shown that only 40% of the land is in cultivation, and that 60% is in ranches. The Cattle Company's land is used principally for ranch purposes.

In 1927 a small tract of the land involved here was assessed at $10.00 per acre. The record futher shows that the agent of the Cattle Company rendered its lands for taxation for the years 1932 and 1933 at different prices, ranging from $5.00 to $10.00 per acre. The Board of Equalization being dissatisfied with this rendition for the year 1932, fixed the price at a uniform figure of $10.00 per acre. In 1933 the Board of Equalization fixed the value of the land for tax purposes as follows: 32,041 acres at $10.00 per acre; 4,036.5 acres at $8.20 per acre; and 2,518 acres at $5.00 per acre. These raises by the Board of Equalization for 1932 and 1933 were protested by the Cattle Company. It is unquestioned that the Cattle Company rendered its personal property in 1933 at $19,230.00, and that the Board of Equalization reduced the rendition to $14,000.00.

In response to special issues, the jury answered as follows:

1. That the Board of Equalization did not appraise the Cattle Company's land in excess of the true value of said lands for the years 1932 and 1933.

2. That the true and full value per acre of the Cattle Company's lands in controversy, on January 1st of the years 1932 and 1933, was $30.00 per acre.

3. That in the years 1932 and 1933 the Cattle Company's tracts of lands in controversy were not less valuable per acre than the improved tracts of similar land belonging to others in Hockley County.

4. That the Board of Equalization did not appraise the improved agricultural land in Hockley County without taking into consideration the value of the improvements thereon for the years 1932 and 1933.

5. That the lands of the Cattle Company were valued by the Board of Equalization for the years 1932 and 1933 on substantially the same pro rata basis, as compared to the true value, as were the other lands and properties in Hockley County.

We have examined the record, and think the evidence sustains the findings of the jury.

The judgment recites that the respective tracts of land were separately assessed for taxes for each year, and it was

decreed that the amounts of taxes due for such years were foreclosed upon each tract with a separate foreclosure.

■ The main contention made by the Cattle Company is that the taxes assessed for the years 1932 and 1933 are excessive. There can be no question but that the Cattle Company owes some taxes for the years mentioned. No offer has been made by the Cattle Company to pay any sum of taxes for those years. In answer to the State's petition filed on August 20, 1934, the Cattle Company seeks to avoid the payment of the taxes assessed for those years, on the ground that the assessments are excessive and do not comply with Subdivision 3 of Article 7206, Vernon's Annotated Texas Civil Statutes. This is the only action taken by the Cattle Company to avoid or set aside the decision of the Board of Equalization with respect to the taxes assessed for the years above mentioned. No testimony was introduced tending to show that the Board of Equalization acted in bad faith in fixing the amount of taxes. The rule has been repeatedly announced that in the absence of fraud or illegality, the action of a board of equalization upon a particular assessment is final; and, furthermore, that such valuation will not be set aside merely upon a showing that the same is in fact excessive. If the board fairly and honestly endeavors to fix a fair and just valuation for taxing purposes, a mistake on its part, under such circumstances, is not subject to review by the courts. Texas & Pacific Ry. Co. v. City of El Paso, 126 Texas, 86, 85 (2d) 245; Roland v. City of Tyler (Texas Comm. of Appls.), 5 S. W. (2d) 756; Druesdow v. Baker (Texas Comm. of Appls.), 229 S. W., 493; Duck v. Peeler, 74 Texas, 268, 11 S. W., 1111; State v. Chicago, R. I. & G. Ry. Co. (Texas Comm. Appls.), 263 S. W., 249; Sunday Lake Iron Co. v. Wakefield, 247 U. S. 350, 38 S. Ct., 495, 62 L. Ed., 1154. However, the rule has been declared that if a board of equalization adopts a method that is illegal, arbitrary, or fundamentally wrong, the decision of the board may be attacked and set aside. Texas & Pacific Ry. Co. v. City of El Paso, supra; Roland v. City of Tyler, supra; Druesdow v. Baker, supra. But the facts of this case do not bring it under the last stated rule.

■ Subdivision 3 of Article 7206 provides that in equalizing lands for taxation they shall be equalized in certain classes. It is contended that this provision of the statute was not followed in this case. It is our opinion that where the equalization is equal and uniform, and in proportion to value, and no

discrimination is shown, as found by the jury in this case, the mere failure to follow the statute in detail would not render the judgment of the Board of Equalization void. We find no sound reason for disturbing the judgment of the trial court enforcing the tax assessments for the years 1932 and 1933.

The taxes for 1927 were assessed against Labor No. 14, Survey 34, Abstract 148, Concho County School lands, containing 177.1 acres; the amount of taxes due for that year, including interest, penalty, etc., up to the time of the trial, aggregating the sum of $44.17. Judgment was rendered for that amount, with a separate foreclosure of the tax lien on this tract of land. No personal judgment was rendered against the Cattle Company. It is agreed that the Cattle Company did not own the land at the time it was assessed for taxes, but that it is now owned by the Cattle Company, and was owned by it at the time of the trial. There appears to be no defensive pleading or evidence assailing the validity of the assessment of this item of taxes; and since no issue was submitted or requested to be submitted to the jury by the Cattle Company relating to this item, the judgment of the trial court for this amount should also be sustained.

The judgment of the Court of Civil Appeals will be reversed, and the judgment of the trial court will be affirmed.

Opinion delivered December 4, 1935.

Rehearing overruled January 8, 1936.