## HINKSON v. LORENZO INDEPENDENT SCHOOL DIST.

### No. 4809.

Court of Civil Appeals of Texas. Amarillo.

Oct. 18, 1937.

Rehearing Denied Nov. 15, 1937.

Vickers & Campbell, of Lubbock, for appellant.

Crenshaw & Dupree, of Lubbock, for appellee.

STOKES, Justice.

This suit was filed by appellee, Lorenzo Independent School District, against appellant for taxes alleged to be due appellee for the years 1930 to 1935, inclusive, and to foreclose its tax lien on two and one-half sections of land belonging to appellant, located in Crosby county, and within the limits of the school district. Appellant answered by the general issue and, specially, that the school district had placed excessive values on his lands for the years mentioned, and alleged the assessments had not been made in a legal and equitable manner, in that the equalization board did not resort to constitutional and legal methods to determine the actual and true value of the lands, but had placed thereon valuations far in excess of the cash or market value, and alleged the taxes assessed for the years mentioned were illegal and void as to the amount in excess of what they would have been if based upon the cash or market value of the lands for the years for which the taxes were assessed.

The case was tried before the court without the intervention of a jury, and resulted in a judgment for appellee for the full amount of taxes sued for, as assessed by the school district for each of the years mentioned, the judgment providing for a recovery of a lump sum and foreclosure of the tax lien asserted by appellee, and made provision for an order of sale to issue. The amount of the judgment was $3,551.56, which included the taxes, interest, and penalty.

Appellant based his defense as to the alleged illegal assessments upon the allegation that at the times the boards of equalization for the respective years met to perform their duties of equalizing the assessment valuations for the district, the board of school trustees presented to them a budget, setting forth the amount of money necessary to be raised to operate the schools, and that the board of equalization had made the assessments with the view of raising the necessary amounts each year by apportionment among the taxpayers of the district in proportion to the amount of property owned by them, respectively, without regard to the cash or market value of the real and personal property, and without regard to its actual or intrinsic value. A further ground of defense was that the board of equalization had established zones within the district and based the valuations and the assessments of the property in each zone according to its location or inclusion within that zone, and without regard to the cash or market value, or any other legal value, of the taxable property.

The general rule is that an attack of the character here made by appellant upon assessment valuations made by a board of equalization cannot be justified in the absence of allegations and proof of fraud, or something equivalent thereto, such as lack of jurisdiction, an obvious violation of the law, or the adoption of a principle or method of establishing valuations or making assessments that is fundamentally wrong and which results in a substantial injury to the complainant. Mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. Druesdow v. Baker (Tex.Com.App.) 229 S.W. 493; Menardville Independent School Dist. v. Moser (Tex.Civ.App.) 90 S.W.(2d) 578, 579; Lubbock Hotel Co. v. Lubbock Independent School Dist. (Tex.Civ.App.) 85 S. W.(2d) 776; Simkins v. City of Corsicana (Tex.Civ.App.) 86 S.W.(2d) 792; State v. Mallet Land & Cattle Co., 126 Tex. 392, 88 S.W.(2d) 471.

In the case of Menardville Independent School District v. Moser, supra, it is said: "We understand the universal holding of our courts to be that a mere overvaluation by a board of equalization in an attempt to equalize the value of property rendered for taxation is not ground for interfering with the board's valuation. * * * As a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or illegality, is

conclusive. Cooley on Taxation (2d Ed.) p. 218. Such valuation cannot be set aside merely upon a showing that the same is, in fact, excessive. If the board fairly and honestly endeavors to reach a correct valuation, a mistake upon its part under such circumstances is not subject to review by the courts."

Many cases are cited under the quoted text, and it is not contended here that the rule is otherwise.

■ The law being so well established in harmony with the above quotation, it therefore becomes a question of whether or not the boards of equalization of the appellee, school district, in performing their duties with respect to equalizing the value of taxable property, acted in a fraudulent manner or pursued a course or principle that was fundamentally wrong. The presumption is that tax officials, in performing their duties in assessing property for taxation, acted in good faith, and the burden is upon a complainant to establish a violation of the constitutional provision in respect to uniformity and reasonableness (article 8, § 1). In an attempt to discharge this burden appellant introduced W. L. Pattillo, who was a member of the board of equalization for the years 1930, 1931, and 1932. His testimony was substantially to the effect that when the boards of equalization met to perform their duties, the school board presented to them a budget and outlined what the expenses would be for running the schools, and requested the equalization boards to perform their duties in such manner as to reach the necessary amount as nearly as it could. He testified, however, that the equalization board did not always get the amount of money which the school board needed, but that an effort was made to equalize the assessments over the district. He said that the equalization boards did not definitely follow the instructions given by the school board, and that there was no occasion upon which the amount suggested by the latter was ever reached.

This witness further testified that at the time the assessments were made, the members of the equalization board did not know that the values were too high. He said land values continued to go down each year, and that the members of the board would conclude later they had placed the values too high. This witness further testified that certain zones of the district were recognized, which were governed by distance from town, but that the values of property were not made equal with respect to other property in each zone. He said that the differences in valuations were based upon the improvements and quality of the various tracts of land.

There is other testimony in the record substantially in keeping with the statements of the witness Pattillo, and we think the conclusion may reasonably be drawn from the evidence that especially for the year 1930 the valuations placed upon appellant's lands were in excess of what they could have been sold for at that time. It is shown, however, that the effects of what is generally termed the depression which spread over the entire country and which began in the summer of 1929 did not reach the section of country involved here until late in the year 1930. There is ample evidence to establish the reasonable values of appellant's lands in 1929 and prior years at more than its assessed valuation for the year 1930, and even if it be conceded that the equalization board placed valuations on it for that year in excess of its real or true value, the record gives ample justification for the discrepancy as an error of judgment honestly made, and it cannot be said that the valuation placed upon it for that year was sufficiently in excess of its real value to warrant the conclusion that it was fraudulent.

The two full sections of land were assessed for the year 1930 at $42.06 per acre, and the half section at $34. A number of witnesses testified that its value at the time the assessment was made did not exceed $20 to $25 an acre.

■ Appellee introduced the witness, R. L. Bowman, who testified that in his opinion the cash market value of the two full sections on January 1, 1930, was $35 to $40 an acre, and that the value of the half section at that time was about $35 an acre. His testimony was that the values of the various tracts for the subsequent years involved was materially in excess of the amounts for which they were assessed. If his testimony were true, the only discrepancy shown by the record as between the legal or cash market value of the land and the amount for which it was assessed was $2.06 an acre for the year 1930. In our opinion this small discrepancy, standing alone, would not be sufficient to establish fraud on the part of the board of equalization. The record does not show that the boards of equalization pursued a course in

the discharge of their duties of allocating the proportionate amount of money necessary to operate the school system among the various taxpayers of the school district in such manner as to raise the amount of money necessary for that purpose; but, on the contrary, the record justifies the conclusion that such board pursued a proper course in arriving at the valuations. We think the most that can be said of the testimony is that, in one instance, the board of equalization made a mistake in determining the valuations and perhaps placed a valuation on appellant's lands somewhat in excess of their value; but there is no justification for the conclusion that such valuations were the result of any scheme or purpose to discriminate against any one or to do otherwise than to make a fair and equitable rendition of the property and to equalize the values of the various items of property within the district, and the first seven assignments of error, under which these matters are presented, will be overruled.

Under the eighth, and last, assignment of error, appellant complains of the provision of the judgment relating to the right of appellant or others having an interest in the land to redeem it after the sale. The judgment provides that the sale made by the sheriff under the order of sale provided by the judgment, and the deed executed by the officer to the purchaser, shall be subject to the right of the owner or any one having an interest in the land to redeem it at any time within two years from the date of the sale upon payment of double the amount paid by the purchaser at the sale. Further provision is to the effect that the purchaser shall not be entitled to possession of the land until the expiration of two years after the date of the sale. These decretal provisions are in keeping with the terms of article 7284a, Revised Civil Statutes 1925, brought forward as the Act of the 40th Legislature, 1st C.S., p. 195, c. 69, § 1, Acts 1927 (Vernon's Ann.Civ.St. art. 7284a). Appellant's contention is that the judgment should have decreed to him the right to redeem his land under the provisions of article 7283, as amended by the 43d Legislature in 1933, 1st C.S., p. 91, c. 31, § 1 (Vernon's Ann.Civ.St. art. 7283), which provides that the owner of real estate sold for the payment of taxes may, within two years after the date of filing for record of the purchaser's deed, have the right to redeem it by paying the amount of money paid for the land, including $1 recording fee for the tax deed and all taxes, etc., thereafter paid, plus 10 per cent. within the first year and 20 per cent. within the second year.

We cannot accede to this contention. The old article 7283 was a part of section 19 of the Act of 1876, c. 152, p. 259, which dealt with sales of land for taxes by the tax collectors under summary process, and had no reference to sales made under judgments of foreclosure of tax liens. Moreover, that act, like all others prior to the enactment of article 7284a in 1927, had reference to sales for taxes due the state, counties, and cities. None of them had any reference, in so far as the matter of redemption is concerned, to sales of real estate under foreclosure of tax liens owing to school and other districts created under the laws of the state. The constitutional provision for such redemption, article 8, section 13, applied only to summary sales made by tax collectors from the tax rolls and not to sales made under foreclosure of tax liens by court judgments. City of San Antonio v. Berry, 92 Tex. 319, 48 S.W. 496; Collins et al. v. Ferguson et al., 22 Tex.Civ. App. 552, 56 S.W. 225. There is nothing in the late amendments of either the Constitution or the statute, article 7283, which would indicate an intention to extend their application.

The Legislature deemed it expedient that the constitutional provision in reference to the right of redemption of real estate after sale should apply also to tax sales made by school and other districts created by the laws of the state. That act is as follows:

"Section 1. Whenever land is sold under a decree and judgment of Court for taxes levied by or for any district organized under the laws of the State of Texas with authority to levy and collect taxes, the owner of such property, or any one having an interest therein, shall have the right to redeem the same at any time within two years from the date of such sale upon payment of double the amount paid by the purchaser at such sale; provided, that the purchaser at such foreclosure sale, and his assigns, shall not be entitled to the possession of the property sold for taxes until the expiration of two years from the date of such sale.

"Section 2. The fact that there is now no sufficient provision for the redemption of land sold under judgments for taxes levied by districts organized under the laws

of the State of Texas, creates an emergency," etc.

■ The language of the act leaves little room for doubt that it applies only to redemption of lands sold under judgments of foreclosure for taxes owing to school and other districts, and when the wording of the emergency clause is considered, we think it is conclusive. We hold, therefore, that appellant's right of redemption is governed by article 7284a, and that the judgment rendered by the trial court in that respect was the correct one.

We have examined all of the assignments of error and propositions presented by appellant, and finding no error in any of them, the judgment of the trial court will be affirmed.