**REYNOLDS et al.**

v.

**CRUDGINGTON et al.**

No. 6323.

Court of Civil Appeals of Texas.
Amarillo.

Sept. 28, 1953.

Rehearing Denied Oct. 26, 1953.

Simpson, Clayton & Fullingim, Amarillo, for appellants.

Adkins, Folley; Adkins, McConnell & Hankins and Monning & Monning, Amarillo, for appellees.

PITTS, Chief Justice.

This is a tax suit filed by appellants E. E. Reynolds and nine other named resident taxpaying citizens against appellees John W. Crudgington, Tax Assessor and Collector for the City of Amarillo and the Amarillo Independent School District, and each of these two named taxing units, together with the named Mayor and City Commissioners of the said City, the named members of the School Board or Trustees of the said School District and the named members of the joint Board of Equalization for the two named taxing units. Appellants alleged that they were each owners of described lands with improvements thereon of a business or commercial type situated within the boundary limits of the two named taxing units and that appellees have arbitrarily, capriciously, unjustly and fraudulently discriminated against them as compared with owners of residential property within the limits of the said taxing units for the year 1952 by the use of a formula or method in arriving at property assessment values based upon a fundamentally wrong principle. Appellants sought a declaratory judgment pronouncing such a formula or method void and injunctive relief compelling equal and uniform property valuations for taxable purposes and particularly as such may affect appellants' properties.

Appellees joined issues with appellants and alleged that they had honestly and conscientiously sought to equalize valuations of all properties in question on the basis of their reasonable cash market values and that the valuations so adopted and approved by them were equal and uniform within the meaning of the law governing such matters.

The case was tried to the court without a jury and judgment was rendered for appellees, denying appellants any recovery from which judgment they have perfected an appeal to this court. Appellants charge that it is the lack of equality and uniformity in the assessments of properties made by appellees as taxing authorities that they are complaining about and seeking to obviate by filing this suit.

Appellants requested the trial court to make and file its findings of fact and conclusions of law. Such were filed by the trial court at length. Let us now review only the material findings of the trial court. It found, in effect, that the personnel as named by the pleadings composed the proper parties to the suit; that the taxing units employed George G. Ehrenborg Company, an engineering firm of Dallas, to make a survey of properties, particularly residential and business properties, within the boundaries of the said taxing units and to recommend fair values of such properties as of date January 1, 1952; that such was done and reports thereof were made to the taxing units; that John W. Crudgington, Tax Assessor and Collector for the two taxing units jointly for more than three years prior thereto, had been previously engaged in the real estate business in Amarillo for twenty years and was familiar with property values within each taxing unit and was well qualified to determine fair market values by reason of his wide range of experience; that from October 1951 to May 1952 Crudgington and a deputy of his worked with Ehrenborg in the survey, during which time he and his deputy personally inspected and examined much residential and commercial property as well as the sales of some of both as reflected by the county deed records; that from Crudgington's investigations, observations and knowledge of local properties and valuations, he concluded that Ehrenborg's report showed residential property values about 20% higher than commercial property values when all elements, such as locations, its use, rental earnings and other factors affecting its value, were duly considered; that by reason of all factors affecting the cash market value of such properties as well as its value for taxing purposes, he concluded that Ehrenborg's values placed on residential properties should be accordingly reduced in order to equalize and make

uniform the values of both residential and commercial properties within the boundaries of the two taxing units; that such adjustments were made by Crudgington for the purpose of equalizing property valuations and making them uniform and the assessments were then made accordingly for all property for the year 1952 for both taxing units at 70% of its market value with taxes duly levied thereon; that a report of such action was made to the joint Board of Equalization, composed of Amarillo business men, some of whom owned both residential and commercial properties; that proper hearings were held by the said Board of Equalization and adjustments of property values were made by the said Board if and when its members thought proper, some of which affected the properties of some of the appellants herein, even reducing some of their commercial property values; that, with some adjustments after fair, impartial, full and satisfactory hearings were had, the said Board approved the property valuations and assessments as fixed by Crudgington, Tax Assessor and Collector, considering such action just and proper; that the actions of the taxing authorities were not unjust, discriminatory, arbitrary, capricious or fraudulent as alleged by appellants but such were fair, equal and uniform within the meaning of the law governing such matters; and that the taxes assessed against appellants' respective properties were fair, just, equitable and valid.

For these and other reasons stated in its findings, the trial court concluded, in effect, that the action and proceedings of appellees as the taxing authorities were not unjust, discriminatory, arbitrary, capricious or fraudulent as contended by appellants but that such action and proceedings were just and fair and made in good faith for the purpose of equalizing and making uniform the tax burden as between residential and commercial properties within the meaning of the law; that there was in fact a mere difference of opinions as between appellants herein and appellees as taxing authorities concerning the valuations being considered; that appellants failed to discharge the burden of proof with which they were charged in their efforts to establish the claims alleged by them but the overwhelming weight of the evidence supports the actions and claims of appellees, for which reasons appellants must not be granted the relief sought by them.

Appellants have not excepted to or in any manner challenged or attacked the findings of the trial court other than to continue their assertions to the effect that unlawful discriminations exist for which reason they are entitled to the relief sought. It is our opinion that appellants could not have successfully challenged or overturned the trial court's findings by attack thereon for the reasons hereafter stated.

█ █ It is elementary law that, if there be sufficient evidence of probative force to support the findings of the trial court, the parties to the suit and the appellate courts are bound thereby. To test the sufficiency of the evidence to determine if it will support the trial court's findings, we must give credence only to the evidence and circumstances favorable to the findings and disregard all evidence to the contrary, indulging every legitimate conclusion which tends to uphold such findings. Barrick v. Gillette, Tex.Civ.App., 187 S.W.2d 683; Boston Ins. Co. v. Rainwater, Tex.Civ.App., 197 S.W.2d 118, and other authorities cited by these cases.

The statement of facts contains 765 pages together with some additional exhibits making it quite voluminous. All of the evidence will not be discussed, however, but we shall discuss and refer only to that evidence we are required to consider in disposing of this appeal in accordance with our understanding of the rules of law cited herein as applied to the facts found.

In support of the trial court's findings it appears that George G. Ehrenborg Company of Dallas had made tax surveys for these taxing units on three prior occasions to the one here made for 1951 and 1952. On the last occasion a complete survey was made by Ehrenborg and his agents as a result of personal inspections made and re-

ports thereof giving valuations were made to appellees. Thereafter a special Land Board, composed partly of some of the members of the Board of Equalization and appointed by the taxing units to review property values, reviewed the said reports, made some changes then in Ehrenborg's reports of property values and turned the same thereafter over to John W. Crudgington, Tax Assessor and Collector. Crudgington had been Assessor and Collector for the two taxing units for a period of three years, prior thereto he had been County Auditor for Potter County several years and prior to that he had been in the real estate business and building houses in Amarillo for a period of twenty years and was well acquainted with properties and their values in the vicinity of Amarillo. Crudgington and his office helpers had worked with Ehrenborg during the survey last made. As a result of his visiting and inspecting personally hundreds of residential and commercial premises in Amarillo, his previous knowledge of such, his examination of recent sales of both kinds of property as reflected by the deed records, his knowledge of most, if not all, of the factors that affected real property valuations, he found Ehrenborg's valuations of residential property generally about 20% higher than his valuations placed on commercial properties generally. Before making the assessments for the said year of 1952, Crudgington accordingly reduced the Ehrenborg values on residential properties generally as he thought proper in order to equalize and make uniform the values on residential properties and commercial properties but such was done after discussing the merits of the matter with the City Mayor, Eugene Klein, a building contractor of Amarillo, and many others, and then only such reductions as he thought necessary were made in order to equalize property valuations. Crudgington then officially and according to his best judgment assessed the taxes accordingly and passed the results of his labor on to the Board of Equalization, realizing that the said Board could make such changes as it saw fit. It was Crudgington's opinion that Ehrenborg's report on residential structures was too high as compared to his report on commercial structures principally because of the fact that he was using a square footage cost too high on residential structures as compared to square footage cost on commercial structures.

Appellants had an opportunity to appear and did appear, together with their attorneys, before the Board of Equalization and complain about the reduction made by Crudgington on residential property without also reducing values on commercial property as shown in both instances by Ehrenborg's report. No complaint was made by them about the market price or assessed values on their property being too high. The Board did not refuse to hear evidence as to valuations but none was offered by appellants as to market values of their properties or that such values were different from Crudgington's appraised values. The Board heard appellants and their attorneys, searched at length for errors and inequalities, made a few adjustments in order to equalize and make uniform the valuations of all properties. As a result of the knowledge and experience of the Board members themselves, the evidence heard by the Board, the careful and deliberate consideration given, the Board unanimously approved the assessed property valuations as fixed by Crudgington, the Assessor and Collector, after making such changes and adjustments as its members considered necessary in order to equalize and make uniform property valuations for taxable purposes. L. C. Nesbitt, Chairman of the Board of Equalization, so testified, in effect. He had been engaged in the real estate business in Amarillo most of his adult life and had been previously a member of the local Board of Equalization for four or five years. He was therefore well acquainted with local properties and their values. He further testified, in effect, that the Board made every effort to adjust any and all inequalities found in valuations and that, after checking Ehrenborg's report and after hearing appellants and others and after inspecting all valuations of proper-

ties, the Board by a unanimous decision concluded that Crudgington had correctly reduced the values of residential properties as previously fixed by Ehrenborg. Stanley Blackburn, another Board member who owned both residential and commercial property, testified practically as did Nesbitt, and he further testified that, if Crudgington had not made the reduction in question, the Board of Equalization would have made such reduction in order to equalize valuations and make them uniform. As a result of all of the Board's findings, it reached the unanimous conclusion that Ehrenborg's report of values on residential properties was too high and that Crudgington correctly reduced such values in order to equalize property values and make them uniform.

■ Without further prolonging a discussion of the evidence of which there is much more, we think it sufficiently supports the trial court's findings, which fully support its "take nothing" judgment.

■ This is a fact case. There is little, if any, controversy about the law governing such matters. It is conceded that the courts uniformly hold that taxing authorities cannot lawfully discriminate in favor of one group of property owners as against another group and that such action is void if and when attempted. In the case at bar, however, the trial court has found and concluded that no such discriminations have been shown to exist here and that nothing more than differences of opinions have been shown.

■ In the case of Taylor v. Alanreed Independent School Dist., Tex.Civ.App., 138 S.W.2d 149, 151, this court held that:

"It is well settled law in this state that if a board of equalization makes a bona fide effort fairly and honestly to assess taxable property at a fair, just, equal and uniform valuation for taxing purposes, even though it may make mistakes in arriving at the exact market value, its actions are not subject to review by the courts. State v.

Mallet Land & Cattle Co., 126 Tex. [392] 396, 88 S.W.2d 471; Texas & P. Ry. Co. v. City of El Paso, 126 Tex. 86, 85 S.W.2d 245; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Hinkson v. Lorenzo Independent School District, Tex.Civ.App., 109 S.W.2d 1008."

In the case at bar the trial court has found and concluded, in effect, that the taxing authorities, including the Board of Equalization, have made a bona fide effort to fairly and honestly assess all taxable property at a fair, just, equal and uniform valuation for taxing purposes.

■ The case of Hinkson v. Lorenzo Independent School Dist., Tex.Civ.App., 109 S.W.2d 1008, 1009, was a tax suit in which excessive values on lands was alleged. This court there held in part:

"The general rule is that an attack of the character here made by appellant upon assessment valuations made by a board of equalization cannot be justified in the absence of allegations and proof of fraud, or something equivalent thereto, such as lack of jurisdiction, an obvious violation of the law, or the adoption of a principle or method of establishing valuations or making assessments that is fundamentally wrong and which results in a substantial injury to the complainant. Mere differences of opinion, honestly entertained, though erroneous, will not warrant the interference of the courts. Druesdow v. Baker (Tex.Com.App.) 229 S.W. 493; Menardville Independent School Dist. v. Moser (Tex.Civ. App.) 90 S.W.2d 578, 579; Lubbock Hotel Co. v. Lubbock Independent School Dist. (Tex.Civ.App.) 85 S.W. 2d 776; Simkins v. City of Corsicana (Tex.Civ.App.) 86 S.W.2d 792; State v. Mallet Land & Cattle Co., 126 Tex. 392, 88 S.W.2d 471."

In the case at bar it was alleged by appellants and they sought to prove that appellees used a formula or method in arriving at property assessment values based upon

a principle that was fundamentally wrong. But the trial court found and concluded that appellants failed to establish such a claim. In the case at bar the trial court likewise found and concluded that a mere difference of opinions existed between the taxing authorities and appellants as to property values but such does not warrant the overturning of the honest opinions held by the taxing authorities concerning such values.

■ In the case of Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756, 760, numerously thereafter cited, the Commission of Appeals held in part that:

"As a general rule, the decision of a board of equalization upon a particular assessment, in the absence of fraud or illegality, is conclusive. Cooley on Taxation (2d Ed.) p. 218. Such valuation cannot be set aside merely upon a showing that the same is, in fact, excessive. If the board fairly and honestly endeavors to reach a correct valuation, a mistake upon its part under such circumstances is not subject to review by the courts. Sunday Lake Iron Co. v. [Township of] Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154; Druesdow v. Baker (Tex.Com. App.) 229 S.W. 493."

In the case at bar it appears that the taxing authorities endeavored to fix correct valuations and that any mistakes that might have been made were honest mistakes in their efforts to equalize valuations and make them uniform.

We find no fault with the authorities cited by appellants. But, according to the judgment of the trial court here rendered, which judgment is well supported by its findings and the evidence presented, the authorities relied on by appellants are not here applicable and are certainly not controlling in this case.

It is our opinion that there is an abundance of evidence of probative force to support the trial court's findings made in support of its judgment, which judgment must be upheld under the rules of law generally governing such matters. State v. Houser, 138 Tex. 28, 156 S.W.2d 968; Port Arthur Independent School Dist. v. Baumer, Tex.Civ.App., 64 S.W.2d 412, writ dismissed; Stevens v. City of El Paso, Tex. Civ.App., 81 S.W.2d 149, writ dismissed; Aycock v. Travis County, Tex.Civ.App., 255 S.W.2d 910, writ refused, reversed and rendered in part on other grounds. There are numerous other authorities supporting our disposition made of the matters here presented. For the reasons stated appellants' points are all overruled and the judgment of the trial court is affirmed.