CORRIGAN PROPERTIES, INC., Appellant,

v.

CITY OF WEST UNIVERSITY PLACE
et al., Appellees.

No. 15304.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

July 2, 1968.

Rehearing Denied Sept. 5, 1968.

**918**

Sears & Burns, Robert L. Burns, Houston, for appellant.

Reynolds, White, Allen & Cook, Stanley B. Binion, Houston, for appellees.

COLEMAN, Justice.

Four suits were filed by appellant to enjoin the City and certain of its officials from collecting the property tax for the years 1963, 1964, 1965 and 1966 on a shopping center located within the City. Appellees duly filed answers to these suits and cross-actions for the tax levied and assessed and for a foreclosure of the tax liens. The suits were consolidated for trial and tried to a jury. At the conclusion of the evidence the trial court withdrew the case from the jury and rendered judgment against appellant for the tax and for foreclosure of the tax liens.

Appellant asserts that the value at which the property was assessed for city taxes was grossly excessive. The question as to whether an assessed valuation is grossly excessive, as distinguished from being the result of a mere difference in opinion or error in judgment, is one of law. Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1935). Since the case was withdrawn from the jury, the evidence must be considered in the light most favorable to the appellant. Jones v. Nafco Oil & Gas, Inc., 380 S.W.2d 570 (Tex. 1964). The testimony as to the market value of the property in question produced by the witness for appellant must be taken as if found by the jury. The question then is whether property having a market value of $660,000.00 in 1963 and 1965, $645,000.00 in 1966, and $625,000.00 in 1964, and assessed for taxes at a value of $304,157.00 for each of said years, was assessed at a grossly excessive valuation considering the fact that the policy of the City was to assess all property at 32% of market value. Had the property been assessed at 32% of the market values the assessed values would have been $211,200.00 for 1963 and 1965, $200,000.00 for 1964, and $206,400.00 for 1966.

The following table shows the savings in taxes and the percentages of savings which would have resulted if appellant's property had been assessed on the basis of the market value as established by the testimony:

| Tax Year | Tax Based on Actual Assessment | Tax Based on Market Value Assessment | Reduction in Taxes | Percentage of Saving |
|---|---|---|---|---|
| 1963 | $5,414.00 | $3,759.36 | $1,654.74 | .305 |
| 1964 | 5,414.00 | 3,560.00 | 1,853.99 | .342 |
| 1965 | 5,414.00 | 3,759.36 | 1,654.74 | .305 |
| 1966 | 5,414.00 | 3,673.92 | 1,740.07 | .321 |

A simple calculation shows that for the year 1963 the assessed value of the property was 30.6% more that it would have been had the established value been used as the basis for assessment. The figures for the years 1964, 1965, and 1966 would be 34.2%, 30.6%, and 32.1%, respectively.

In Whelan v. State, 155 Tex. 14, 282 S.W.2d 378 (1955), the court said:

"If the answers of the jury show that the assessed valuation of petitioners' properties is grossly excessive, or if the answers to the other issues satisfy the court that petitioners have suffered substantial injury by reason of the other actions of the taxing authorities complained of, the assessments of petitioners' properties for the years 1950, 1951 and 1952 should be cancelled without prejudice to the right of taxing authorities to accept petitioners' taxes on the basis of the valuations at which petitioners rendered their properties or to proceed under the provisions of Article 7346, V.A.C.S. If an issue on excessive valuation of petitioners' properties—as distinguished from an unequal valuation thereof—is submitted, cancellation of the assessments should not follow unless the finding shows the assessed valuations to be grossly excessive, Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, writ denied; State v. Houser, 138 Tex. 28, 156 S.W.2d 968, as distinguished from a mere difference in opinion or error in judgment, State v. Houser, supra; Simkins v. City of Corsicana, Tex.Civ.App., 86 S.W.2d 792, no writ history. If other findings show only some measure of insubstantial discrimination, the assessments should not be cancelled."

In Johnson v. Holland, cited above, the court said:

"The supreme court of Illinois, in Railroad Co. v. Cole, 75 Ill. [591,] 594, in passing upon a case where the valuation placed upon the property of the railway company by the board of equalization was arbitrary and excessive to an unreasonable extent, say: 'Because the law has devolved on the board of equalization, and not on the courts, the duty of making such valuations, we hold it is not the duty of the courts to exercise any supervisory care over its valuations, so long as it acts within the scope of the powers with which it is invested, and in obedience to what may reasonably be presumed to be an honest judgment, however much we may disagree with it. But whenever the board undertakes to go beyond its jurisdiction, or to fix valuations, through prejudice or a reckless disregard of duty, in opposition to what must necessarily be the judgment of all persons of reflection, it is the duty of the courts to interfere and protect taxpayers against the consequences of its acts. Where its jurisdiction is conceded, no mere difference of opinion as to the reasonableness of its valuations will justify equitable interference; but its valuation

must be the result of honest judgment, and not of mere will.' This case, upon the facts, seems to be very much in point here. In Hotel Co. v. Lieb, the same court said: 'Where, however, the valuation is so grossly out of the way as to show that the assessor could not have been honest in his valuation—must reasonably have known that it was excessive,—it is accepted as evidence of a fraud upon his part against the taxpayer, and the court will interpose.' 83 Ill. 609. See, also, Cooley, Tax'n (2d Ed.) p. 784; 25 Am. & Eng. Enc. Law (1st Ed.) pp. 261, 262, and authorities there cited; Tainter v. Lucas, 29 Wis. 375; 2 Desty Tax'n, pp. 656, 681, 1433. If, however, the board errs in honest judgment, under our statute, there is no appeal from its decision."

In Simkins v. City of Corsicana, 86 S.W. 2d 792 (Tex.Civ.App., Waco 1935), the court assumed that the real value of the property in question was $20,000.00, and that the assessment was made on the basis of a value of $29,130.00. The court then said:

"It is well settled that the decisions of tax boards in matters of valuation are quasi judicial in their nature, and therefore they are not subject to collateral attack, in the absence of fraud or other obvious violations of law. No mere discrepancy between the true value of the property and the amount at which it is assessed will warrant a court in setting aside a valuation fixed by the board where such valuation is the result of the honest judgment of the board in the application of lawful principles. * * *

"In the case at bar, the evidence was sufficient to have justified the jury in concluding that the valuation as fixed by the board was grossly excessive. There are some authorities in this state which hold that the mere fact that the assessment is grossly excessive is sufficient to authorize a jury to infer that the board acted arbitrarily. Johnson v.

Holland, 17 Tex.Civ.App. 210, 43 S.W. 71 (writ denied); City of Sweetwater v. Biard Development Co. (Tex.Civ.App.) 203 S.W. 801. * * *"

In State v. Houser, 138 Tex. 28, 156 S. W.2d 968 (1941), the Supreme Court said:

"Our courts have repeatedly held that the decisions of taxing boards in the matter of valuations are quasi-judicial in nature; and, therefore, in the absence of fraud or other obvious violation of the law, such decisions are not subject to collateral attack. It has also been held that such valuations will not be set aside merely upon a showing that the same are in fact excessive. If a board fairly and honestly endeavors to fix a just valuation for taxing purposes, a mistake on its part under such circumstances is not subject to review by the courts. State et al. v. Mallet Land & Cattle Co. Inc., 126 Tex. 392, 88 S.W.2d 471; Texas & Pacific Ry. Co. v. City of El Paso, 126 Tex. 86, 85 S.W.2d 245; Rowland v. City of Tyler, Tex.Com.App., 5 S.W.2d 756; Druesdow v. Baker, Tex.Com.App., 229 S.W. 493; Duck v. Peeler, 74 Tex. 268, 11 S.W. 1111; State v. Chicago, R. I. & G. Ry. Co., Tex.Com.App., 263 S.W. 249; Sunday Lake Iron Co. v. Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154; Simkins v. City of Corsicana, Tex. Civ.App., 86 S.W.2d 792. Of course, if a board adopts a method that is illegal, arbitrary, or fundamentally wrong, or if its valuation is grossly excessive, the decision of such board may be attacked and set aside. Texas & Pacific Ry. Co. v. City of El Paso, supra; Rowland v. City of Tyler, supra; Druesdow v. Baker, supra; Simkins v. City of Corsicana, supra.

" * * * Certainly a tax assessment cannot be set aside as being null and void merely because a court or jury differs with an equalization board as to valuation. On the contrary, it must be shown either that the board's valuation was arrived at by an arbitrary or unlaw-

ful method, or that the valuation fixed was itself unreasonable, fraudulent, or discriminatory. * * * "

In State v. Whittenburg, 153 Tex. 205, 265 S.W.2d 569 (1954), the court said:

"While it has been held that a grossly excessive valuation may, in law, be sufficient to establish such fraud or illegality as to render a valuation void, Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71, writ denied; City of Sweetwater v. Biard Development Co., Tex.Civ.App., 203 S.W. 801, no writ; Simkins v. City of Corsicana, Tex.Civ. App., 86 S.W.2d 792, no writ; Howth v. French Ind. School Dist., Tex.Civ.App., 115 S.W.2d 1036; French Ind. School Dist. v. Howth, 134 Tex. 211, 134 S.W. 2d 1036, it is held with equal emphasis that mere errors in judgment or the fact that a trial judge or jury differs with the valuation fixed will not suffice as a basis for avoiding the board's action. Simkins v. City of Corsicana, supra; Druesdow v. Baker, supra; State v. Houser, supra."

██ Appellant contends that the case of Whelan v. State, supra, establishes that an assessment is grossly excessive if by reason thereof the taxpayer suffers substantial injury. We do not agree with this interpretation of the language used by the Supreme Court in that case. Proof of substantial injury is required where relief is sought on the basis of an arbitrary or unlawful scheme or plan, or on the basis of discrimination, in addition to proof of the plan or of the discrimination. Here the basis for relief is fraud. Substantial injury may well result from an honest mistake in judgment. The testimony here demonstrates that the process of fixing the fair market value of a large commercial property is complex and, in many respects, is based on the opinion of the appraiser. There is a wide area for disagreement between honest people. The fact that the judge or jury disagrees with the value placed on the property and finds it exces-

sive, and that a substantial injury results to the taxpayer, does not necessarily establish fraud in law. Since there is no rule of thumb which can be used to determine when an assessment is grossly excessive, we must look to the decided cases.

Here the value of the property, as established at the trial, ranged from 65.8% to 69.4% of the value used as a basis for the assessment. In Johnson v. Holland, 17 Tex.Civ.App. 210, 43 S.W. 71 (1897, error ref.), an assessment was found to be grossly excessive when the true value was 66.4% of the assessed value. Likewise the assessments were held grossly excessive in City of Sweetwater v. Biard Development Co., 203 S.W. 801 (El Paso Tex.Civ.App. 1918), where the percentage was 74.99%. In Simkins v. City of Corsicana, supra, evidence that the property was assessed at 33.6% in excess of the true value was held sufficient to raise the question of gross excessiveness. See also Pierce v. City of Jacksonville, 403 S.W.2d 512 (Tyler Tex.Civ.App.1966, error ref., n. r. e.). Each of these cases has been cited by the Supreme Court of Texas as authoritative on this question.

The assessment placed on the property in this case by the tax assessor and adopted by the Board of Equalization establishes that they considered the market value of the property to be $950,490.00. This valuation is so far in excess of the true market value as established by the testimony as to be in itself unreasonable and it cannot be explained on the basis that it was merely an honest mistake in judgment.

There was testimony that all property in the City was valued and assessed at 32% of its cash market value. In answer to a question by appellant's attorney worded in such a fashion as to exclude appellant's property, the City's tax assessor testified that it had been his attempt to assess all property at 32% of its cash market value and that this had been accomplished to a "reasonable average". He testified that to the best of his knowledge the other commercial areas were assessed at 32% of

their cash market values. On the basis of the cash market value of appellant's property as established by the evidence, appellant's property was assessed at 46% of its cash market value for the year 1963. On this basis appellant reasons that he has been discriminated against by having his property assessed at a higher ratio.

■ A reasonable discrepancy between the true value of the property and the value at which it is assessed for taxes is permitted to cover the difference in judgment as to the value of property. One whose property is assessed at substantially the same basis as the great bulk of the property on the same tax roll cannot be heard to complain. In order to compare the valuations of various properties, it is necessary to know both the cash market value and the percentage of that value used for making the assessment. While the use of 40% of market value for one property and 32% for the bulk of the properties might well be unlawful discrimination, since it would be willful, the same assessments would not necessarily constitute discrimination if it was the result of an honest difference of opinion as to value. It is necessary, in order to raise the question of unlawful discrimination, for appellant to prove the basis used in assessing the other property in the county by proving the market value of a reasonable number of comparable properties and to compare this value with the assessed value of those properties. Dallas County v. Dallas Nat. Bank, 142 Tex. 439, 179 S.W.2d 288 (1944).

■ Appellant also contends that there is evidence sufficient to raise a question of fact for the jury that appellee adopted an arbitrary, capricious and fraudulent scheme in valuing appellant's property in that appellee, without regard to other more appropriate methods of determining value, used as its sole criterion the market value of the land plus the cost of the improvements based upon a depreciated unit cost, and that by the adoption of this scheme appellant suffered substantial injury. The testimony shows that the assessor raised the rendition made by appellant on the basis of an appraisal made by one of his employees. The final appraisal was based on market value of the land plus the cost of the improvements based on a depreciated unit cost. The appraiser also figured the market value based on an income approach. There is evidence that the result reached was incorrect because a proper method of arriving at estimated net income was not used. There was evidence that the depreciated unit cost basis used is not a recognized method of arriving at cost. This appraisal report, and the valuation placed on the property by the assessor based thereon, was considered by the Board. The evidence shows an attempt on the part of the assessor and of the board to ascertain cash market value. Evidence of the use of faulty or incorrect data does not raise the issue of the adoption of an arbitrary, capricious, and fraudulent scheme. The appraisal report shows that the appraiser considered the income approach to valuation and stated his opinion that for this property the cost approach was more appropriate in determining cash market value. It is not established that the board relied solely on the cost method of appraisal. Aycock v. Travis County, 255 S.W.2d 910 (Austin Tex.Civ.App.1953, error ref.).

For the benefit of the parties in the event of a new trial, we call attention to the case of Rowland v. City of Tyler, 5 S.W.2d 756 (Tex.Com.App.1928), wherein the court states:

"The courts have frequently, and we think properly, condemned the action of boards of equalization in taking any one particular element as a rigid standard by which values of real estate shall be determined. The true value of real estate cannot be arrived at unless equalization boards give consideration to all proper elements that are determinative of the market value thereof. * * *"

This rule is again stated in Electra Independent School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645 (1943).

Appellant contends that this Court should reverse the judgment of the trial court and render judgment in its favor because the property was duly rendered for taxation and appellee failed to present evidence under oath at the hearings before the Board of Equalization to rebut the sworn renditions. The renditions made by appellant were not accepted by the assessor. He disagreed with the values at which the properties were rendered and increased the rendered figure. Appellant was given an opportunity to appear before the Board of Equalization, and a representative did appear and protest the increase. The Board heard no sworn testimony, but, apparently, relied on the value placed on the property by the assessor and appraisal prepared in the assessor's office. There is a question as to whether the rendition for the year 1966 was received within the time allowed for renditions. Appellant cites and relies on the cases of Republic Ins. Co. v. Highland Park Independent School District of Dallas County, 129 Tex. 55, 102 S.W.2d 184 (1937), and Wells Independent School District v. St. Louis Southwestern Railway Co., 324 S.W.2d 442 (Texarkana Tex.Civ.App. 1959, error ref., n. r. e.).

In the Republic Ins. Co. case the Court held:

"It is well settled that, when a rendition has been made by a property owner in the statutory manner, under oath, and accepted by the tax assessor without such action as is provided by article 7211, it is prima facie a correct rendition. Even when the board itself is dissatisfied with the values fixed by the owner and gives notice of a raise, if at the hearing it adopts some arbitrary standard of valuation, or refuses to hear proof, or fails to adduce proof upon its own motion, so that an illegal value is fixed, the rendition made by the owner prevails and becomes the basis upon which taxes are to be paid. State v. Richardson [126 Tex. 11,] 84 S.W.2d 1076, and authorities cited."

In the Wells Ind. School District case, the Court held:

"It is our opinion that the $81,750 sworn rendition of plaintiff for the year 1957, accepted by the tax assessor-collector of defendant school district, was prima facie a correct rendition. The sworn testimony of plaintiff's agent LaTourette to the effect that $81,750 was the value of plaintiff's properties for the year 1957 in defendant school district (in addition to the sworn 1957 rendition of plaintiff's properties in question) was the only sworn evidence before the Board of Equalization at the hearing in question and in the absence of sworn controverting evidence the board was not authorized to disregard the sworn testimony of LaTourette and the prima facie correct 1957 sworn rendition of plaintiff. Article 7212, V.A.C.S., supra, expressly provides that the Board of Equalization should not fix values until 'after hearing the evidence' and 'in accordance with the evidence so introduced.' It is clear that the Board of Equalization under the facts in this case did not follow the provisions of Article 7212, V.A.C.S., but instead based their raise in the assessment from $81,750 to $124,800, on their own knowledge and experience, which was not sworn to and placed in the record in the form of evidence and upon their agreement among themselves, made prior to the hearing, to make said raise, as shown in the hereinbefore quoted portion of the affidavits of the three members of the Board of Equalization. We therefore hold that the act of the Board in raising the assessment in question from $81,750 to $124,800 was contrary to Article 7212, V.A.C.S., and was illegal."

Appellee contends that these cases are not controlling because in this case the rendition was not accepted by the tax assessor. Where the Board fails to hear evidence on values, but proceeds to raise the value above the rendition, whether made by the taxpayer or by the assessor,

the assessment is illegal because of the failure to follow the procedure prescribed by law. State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076 (1935).

The matter was carefully considered by the court in McGinnis v. Northwest Independent School District, 294 S.W.2d 154 (Ft. Worth Tex.Civ.App.1956, error ref., n. r. e.), where the court said:

"Article 7211 provides that when a property owner renders his own property and the tax assessor is not satisfied with the owner's rendition the assessor shall himself render the property at the valuation he deems proper. Impliedly, the tax assessor is charged with the duty of attempting to agree with the owner upon a proper rendition, failing which the disagreement is certified to the body charged with the obligation of resolving the dispute. In the present instance, had such a dispute arisen, the proper body to hold a hearing would have been the Board of Equalization. The Board, in such instances, would be obliged to sit in a quasi judicial capacity and determine the dispute.

"At such a hearing, the proper value would be prima facie established in the property owner's rendition, and, before the Board would be entitled to fix the values any higher, evidence would necessarily be required to overcome the property owner's prima facie case thereby established. Of course, the property owner would be entitled to rebut any evidence introduced to the effect that his rendered valuation was too low.

"Article 7212 authorizes and directs Boards of Equalization to supervise the assessment of property within their districts and to increase or diminish the valuation of property rendered for tax purposes, whether the rendition has been made by the property owner for himself or by the tax assessor for the property owner. In neither event would such a property owner ever have cause for complaint where the valuation of his property is diminished through action of the Board. The property owner does have cause for complaint when the valuation of his property is raised. It is only in instances provided for in Article 7211 and in such assessment-increase instances under Article 7212 that any property owner would be entitled to a quasi judicial hearing on values before the Board of Equalization. In an equitable proceeding like that of the present instance such a property owner's complaint would necessarily have to be predicated upon an action by a Board of Equalization directing an increase of valuation above the amount of the rendition. He would have no case in equity under the complaints made in points one and two because no assessment-increase was involved and no rendition made by him had been disputed by the tax assessor. He would be bound to the assessor's rendition when he has not rendered his own property, so long as the assessor honestly rendered it for him and the assessment was not illegal, arbitrary and void, etc. * * *"

In Rowland v. City of Tyler, 5 S.W.2d 756 (Tex.Com.App.1928), the court held:

"Finally, it is insisted by the defendant in error that the tender made by the plaintiff in error of $365 in payment of the taxes, based upon the value of the property as it had been assessed by her, was insufficient, in view of the court's finding that the actual value of her property was in excess of the amount rendered for taxation, based upon the 65 per cent. proportion upon which all other property was assessed. We do not deem it necessary to determine the question as to the power of the trial court to revise an assessment made by the taxpayer, for the reason that the issue sought to be presented was not made by the pleadings. In the state of the pleadings, the court was not authorized, if it had the power to do so, to do any more than declare unlawful the action of the board of equalization in raising the assessment of plaintiff in error's property. In this

state of the record the original assessment of the property made by plaintiff in error determined the amount of tax due by her. Hence the action of the trial court holding that she had made sufficient tender is not erroneous."

We have in this case a matter which has not been considered in any of the cases brought to our attention. The City of West University Place is a home rule city. Article 1175, Sec. 8, V.A.C.S., authorizes home rule cities to provide for "the mode and method of assessing taxes, both real and personal, against any person and corporation." Smith v. City of Austin, 212 S.W.2d 947 (Austin Tex.Civ.App.1948). Sec. 7 of Article XXI of the Charter of the City of West University Place, provides:

"All property shall be rendered for taxation by the owner thereof or his agent, as provided by the laws of the State for the rendition of property for assessment by the county, in so far as applicable. However, in making such renditions the owner or agent shall not be required to state the value of the real property, but shall furnish to the Assessor and Collector, verified by the oath of the party making such rendition, a full and complete list and schedule of all property, belonging to the person, firm or corporation in whose name such property is rendered. It shall be the duty of the Assessor and Collector to value each and every item of the property so rendered in accordance with the reasonable cash market value, if it has such, and otherwise the real or intrinsic value thereof upon a basis of valuation to be applied alike to all taxpayers, and to transmit to the City Commission all renditions thus made together with a statement by him, verified by his oath, to the effect that he has truly, fairly and equally valued all such property."

Section 11 of Article XXI provides:

"It shall be the duty of the City Commission, as soon as the assessment rolls are completed, to refer the same to the Board of Equalization, whose duty it shall be to equalize the taxes assessed on said rolls and to make all necessary correction and adjustment to that end; and, in addition to the powers granted it by this Charter, said board shall also have the same powers and perform the same duties as the County Commissioners' Courts of this State in regard to the assessment of property for taxation and the equalization thereof, and shall be governed in its procedure and acts in this respect as now provided or that may be hereafter provided by the laws of this State relating to the equalization of State and County taxes by said Commissioners' Court. In addition to the foregoing, the said board shall have the power, when sitting, to compel the production of all books, documents, stocks, bonds, and other papers pertinent to the investigation, to be produced before it in the investigation of the taxable values of any person or persons, firm or corporation having or owning property within the corporate limits of the city subject to taxation. Said Board shall have the full power to correct any mistake or injustice or inequality in the assessment of property, the rendition of same, or in the payment of taxes, and shall have power to correct such mistakes and make redress therefor; * * *."

Section 12 of Article XXI provides:

"Board of Equalization—Appeals to by Owners—Procedure.—Any person aggrieved by reason of any act of the Assessor and Collector of Taxes in making up the assessments, or in the valuation of property for taxing purposes, shall be entitled to make complaint to the Board of Equalization and to appeal to said Board for revision and correction of the matter upon which said complaint is based. The Board shall hear and examine such complaint or appeal and may examine the complainant, his agent or attorney, and all other persons who may shed light on said controversy on oath touching the matter complained of and may compel

the attendance of witnesses and the production of books and papers necessary to enlighten the Board and elucidate the controversy. The action of the Board shall be final."

These provisions are valid and must be followed in assessing property for taxation in the city. Forwood v. City of Taylor, 147 Tex. 161, 214 S.W.2d 282 (1948).

Under the charter of the City of West University Place, the owner of property is required to render it for taxation, but he is not required to file a sworn statement of the value of the property. In this case such a statement was filed and was given to the assessor and the Board for consideration. We think, however, that it cannot be considered as, prima facie, a correct valuation. The assessor and collector of taxes has the duty of placing the value on the property. The list of properties submitted by him to the City Commission together with the value placed thereon, verified as required by the charter, would be prima facie correct. It will be presumed that he has properly performed his duty in this respect. Birdwell v. City of Boyd, Wise County, 233 S.W.2d 603 (Ft. Worth Tex.Civ.App.1950).

The evidence shows that the Board failed to summon witnesses. The evidence before it consisted of the sworn statements which created the controversy. Under the charter provisions quoted and the statutes relied on in the cases hereinbefore cited, the Board had the duty of summoning witnesses and requiring the production of books and papers if necessary to determine the dispute over the market value of the property. Since neither the City nor the property owner produced sworn testimony other than the rendition sheets, and since the Board did not raise the assessment made by assessor, the assessment is not void by reason of the failure to hear testimony or to receive further evidence. The burden of producing evidence to show that the rendition was incorrect was on the taxpayer.

McGinnis v. Northwest Independent School District, supra.

Appellant's exhibits Nos. 25, 26, 27 and 28 should have been admitted into evidence as photostatic copies of original records of a business. Art. 3731b, V.A.C.S.; Kelso v. Wheeler, 310 S.W.2d 148 (Houston Tex.Civ.App.1958).

Appellant complains of the rulings of the trial court in refusing to admit evidence of the sales price of other properties, which an expert witness testified were comparable to the appellant's property. The questions raised are fully discussed in State v. Oakley, 163 Tex. 463, 356 S.W.2d 909, 95 A.L.R. 2d 1207 (1962) and cases cited therein. On a new trial the precise question of judicial discretion raised here is not likely to reoccur, and we consider it unnecessary to lengthen this opinion by a full discussion of each of these properties since the questions raised are not material to the decision on this appeal.

The judgment of the Trial Court is reversed and the cause is ordered remanded.