In the Matter of STANDARD MILLING
COMPANY, Inc., Bankrupt.

UNITED STATES of America,
Plaintiff,

v.

The STANDARD MILLING COMPANY
et al., Defendants.

No. BK-5-289.

Civ. A. No. 5-620.

United States District Court,
N. D. Texas,
Lubbock Division.

Dec. 2, 1970.

Cleddie F. Edwards of Edwards & Associates, Lubbock, Tex., for petitioners.

John E. Vickers, Robert E. Garner, Trustee, Lubbock, Tex., for respondent.

## MEMORANDUM OPINION AND ORDER

WOODWARD, District Judge.

Petitioners are four taxing authorities, the City of Lubbock, the Lubbock Independent School District, the State of Texas, and the County of Lubbock, who seek a review of the order of the referee in bankruptcy which reduced substantially the amount of real and personal property taxes claimed against the bankrupt corporation by these authorities. Respondent is the Trustee and Receiver in the bankruptcy proceeding of Standard Milling Co., Inc., of Lubbock, Texas.

The Referee entered the order following a hearing on the Trustee's Application for Determination of the Amount of Real and Personal Taxes Properly Due by the Bankrupt. Prior to the Trustee's Application, these four taxing authorities had filed claims for taxes in the bankruptcy proceedings for taxes levied but unpaid for the years of 1967, 1968, and 1969. Two of the authorities, the School District and City, had levied upon the property on the basis of an assessed value of $156,270.00, representing two-thirds of the fair market value estimated by the tax assessor of $234,405.-00. State and County taxes for 1967, 1968, and 1969 on the real estate of the bankrupt were assessed on a value of $95,580.00 each year, based upon 40% of their tax assessor's estimate of a fair market valuation of $238,950.00. At the hearing the Trustee presented evidence which indicated that the true market value of the property was $108,000.00, the value of the realty being $102,000.00 and the value of personal property being $6,000.00. Therefore, in filing his application the Trustee charged that the estimated valuations of the taxing authorities were so grossly excessive as to be arbitrary and fraudulent as a matter of law. In his Determination of Amount of Real Property Taxes Properly Due by Bankrupt, the Referee adopted the Trustee's view of the market value and reduced the taxes for the years in question accordingly.

In their Petition for Review of the Referee's Order, the taxing authorities bring numerous points of error claiming that the Referee did not have jurisdiction to determine the amount of taxes due, that there is error in the Referee's findings because they are against the weight and preponderance of evidence, and because the Referee erred in admitting certain testimony. They also allege error in the Referee's action in redetermining the assessments because the Trustee failed to fulfill his burden of proof by showing that the taxes assessed were grossly excessive.

Petitioners' jurisdictional challenge is based on the assertion that the Referee had no jurisdiction to determine the amount of taxes due since neither the State of Texas nor Lubbock County made claim in the bankruptcy proceed-

ing for taxes due. Such a basis does not exist as Claim Number twenty-six filed on June 30, 1969, in the bankruptcy proceedings of Standard Milling Co., Inc., is for "State and County taxes for the years 1967, 1968, 1969."

██ They further claim no jurisdiction as the Trustee's proper remedy was in the courts of the State of· Texas where such assessments might have been reviewed. This claim is negated by several authorities. Section 2(a) (2A) of the Bankruptcy Act as recently amended, 11 U.S.C. § 11(a) (2A) gives the bankruptcy courts jurisdiction to:

> Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction * * *.

In the cause of City of Amarillo v. Eakens, 399 F.2d 541 (5th Cir. 1968), the Fifth Circuit Court of Appeals held that under § 2A the Referee in bankruptcy could redetermine assessments of taxes for previous years when the taxes had not been paid nor contested before an administrative or judicial tribunal. In the instant case the owners of the property had neither presented a valuation nor had they contested any assessment by taking it before a board of equalization. Further, even if there had been no claim filed as Petitioners contend, the bankruptcy court would have had jurisdiction under § 2A. In In re Century Vault Co., 416 F.2d 1035 (3rd Cir. 1969) the holding of the *Eakens* case was enlarged by the statement that, "[t]he fact that a proof of claim has or has not been filed is immaterial." Id. at 1041. Therefore, even if the Trustee could have prosecuted an action in state court to have had the tax assessments redetermined, the bankruptcy court clearly had jurisdiction over the dispute and did not abuse its authority in determining to hear the Trustee's Application.

The evidentiary errors alleged by Petitioners can be grouped under the following headings:

1. the Referee erred in admitting the testimony of the Trustee's expert witnesses because they were not qualified "experts" to determine the value of the property in question or they did not use recognized approaches in assessing the value of the property,

2. the Referee erred in disregarding the appraisal of Petitioner's expert witness because he was the only expert who used the recognized methods of appraisal in determining his estimate of the value of the property of Standard Milling Co., Inc.,

3. the Referee erred in admitting testimony as to the bankruptcy sale price of the property since such evidence has no probative effect nor bearing on the true cash market value,

4. the Trustee erred in redetermining the amount of taxes due for the years in question since no evidence was presented to prove that the fair market value of the bankrupt's property on January 1, 1968 and January 1, 1969 was $108,000.00, and

5. the evidence presented by the Trustee was not sufficient to meet his Burden of Proof because he did not prove that the taxes assessed were so grossly excessive that they should be overturned.

Since the first three propositions listed above generally deal with the question of what factors the Referee used in determining the fair market value of Standard Milling Co., Inc., they can be discussed simultaneously.

The Trustee introduced four witnesses, including himself, who testified about the fair market value of the property. The Petitioners introduced two witnesses, and the testimony of James Kilchenstein, one of these, was stricken by stipulation. Petitioners' remaining

witness was Wesley Read, a real estate appraiser.

■■ Petitioners' complaint that the Trustee was not qualified as an expert witness is refuted by the case of Spitzer v. Stichman, 278 F.2d 402 (2d Cir. 1960), holding that a trustee may be a competent "expert" witness where he has had extensive experience in dealing with the property in question. The testimony in the Statement of Facts from the bankruptcy hearing reveals that Mr. Garner, the Trustee here, had previous experience in dealing with the property in question since January of 1965, that he had aided in attempts to sell the Standard Milling Co., Inc., since that date and that he was familiar with the economic circumstances surrounding the grain milling and storage business and with comparable property values in the approximate geographic area of Standard Milling. The standard for determining the competence of a witness is that "[t]he expert qualifications of a witness is a question for the trial judge, whose decision is conclusive unless clearly erroneous as a matter of law," United States v. 41 Cases, More or Less, 420 F. 2d 1126, 1130–1131 (5th Cir. 1970). This Court cannot say that the Referee abused his discretion in admitting the Trustee's testimony.

■ The Petitioners seek to impeach the testimony of Oliver Cates, the Trustee's expert appraiser, because they allege his testimony about his method of appraisal revealed his opinion was based on "common sense" rather than one of the "accepted" methods of determining the value of property. In the same vein of thought, they suggest that the only testimony establishing the true market value of the property is that of their expert witness Wesley Read who did follow the accepted methods in determining his appraisal. This objection goes to the weight and credibility of the evidence. Therefore the question which this Court must decide is whether the Referee's reliance upon this evidence is clearly erroneous.

At the hearing Cates stated that he appraised the property at a value of $130,000.00, and Read's estimate was that the property was worth $273,500.00. The difference in these valuations is primarily due to Read's belief that the buildings on the land were functionable, usable and, therefore, valuable while the Trustee's witnesses felt the buildings were not functional, were obsolete, and were not valuable. Read offered nothing to substantiate his view. On the other hand, the Trustee and J. M. Cunningham, the purchaser of Standard Milling at the bankruptcy sale, both testified that prospective buyers had called the facilities and equipment obsolete. Also the Trustee outlined convincingly the "blight" in the grain storage market in the Lubbock area and argued that this market depression substantially lowered the fair market value of the property. Such an argument is valid because a recent Texas case, Garvey Elevators, Inc. v. Eagle Mountain-Saginaw Independent School District, 423 S.W.2d 455 (Tex.Civ.App.—Ft. Worth 1968, no writ), has established that a low demand for grain storage space may be a material factor in determining the fair market value of property for purposes of tax assessment.

■ Petitioners allege that the Referee erred in considering the price the property brought at the Trustee's sale in determining its fair market value. This exception is not well taken for in Mizell v. Phillips, 240 F.2d 738 (5th Cir. 1957), the Fifth Circuit stated, "[t]he admission in evidence of the price brought at the trustee's sale lends probative force to the asset evaluation * * *." Id. at 741. The Referee determined that the fair market value of the assets in question was $108,000.00. That such a figure was approximately correct is substantiated by the testimony of the Trustee and the owner of the property. Therefore, having reviewed the entire testimony submitted in the bankruptcy hearing, this Court is of the opinion that the Referee did not abuse his discretion in admitting "expert" testimony

and that there is no error in his reliance on the Trustee's evidence and disregard of Petitioners' expert's appraisal.

As to Petitioners' fourth allegation, both Petitioners' and Respondent's experts agreed that the fair market value of the assets was substantially the same throughout all of the years in question. As stated elsewhere in this opinion, the Referee properly found that the fair market value of the assets was $108,000.00 and it necessarily and logically follows that this would be the correct fair market value on January 1st of each year in question, and that there is sufficient evidence to support such a finding.

Finally, Petitioners complain that even though the taxing authorities' valuations were high, the evidence did not establish that they were grossly excessive. Under Texas law, which governs here, the Trustee had to establish that the assessed valuation of the property was grossly excessive in order to have the valuation set aside. See City of Amarillo v. Eakens, *supra*, 399 F.2d at p. 544.

In Corrigan Properties, Inc. v. City of West University Place, 430 S.W.2d 917 (Tex.Civ.App.—Houston (1st Dist.) 1968, no writ), the Court of Civil Appeals reviewed several cases in which the difference between assessed value and market value caused assessments to be held "grossly excessive" as a matter of law.

In one case cited there, City of Sweetwater v. Biard Development Co., 203 S. W. 801 (Tex.Civ.App.—El Paso 1918, no writ), the market value was 74.99% of the assessed value, but the El Paso Court held the assessment to be grossly excessive and set it aside. Other cases set aside valuations where the fair market value was 66.4% of the assessed value, see Johnson v. Holland, 17 Tex.Civ. App. 210, 43 S.W. 71 (1897, writ ref'd.), or where it ranged from 65.8% to 69.4% of the assessed value; see Corrigan Properties, *supra*, 430 S.W.2d at p. 921.

Here the Referee determined that the value of the property was $108,000.00 and the minimum value placed by the taxing authorities was $234,405.00, i. e. the true value was approximately 46% of the value assessed by these taxing units. Under these decisions, clearly these valuations were grossly excessive and the Referee was justified in setting them aside.

Thus having reviewed the record from below and having determined that the Referee's determination of the true market value of the property is in accord with the weight of the evidence, that he had jurisdiction to determine the amount of taxes properly due, and that the assessed valuations were grossly excessive as a matter of law, the Referee's Determination of Taxes Properly Due and Order are affirmed and the Trustee is ordered to pay the taxes due Petitioners based upon the values of the property as found by the Referee and the claims based on the Petitioners' assessed valuations are denied.

This opinion shall constitute the Findings of Fact and Conclusions of Law herein.