83 F.3d 433
 13 Colo. Bankr. Ct. Rep. 124
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 In re: O.J. OSBORN and Roma Lou Osborn, Debtors,
O.J. Osborn and Roma Lou Osborn, Appellants,
v.
Durant Bank & Trust Company of Durant, Oklahoma, Appellant,
v.
Durant Bank & Trust Company of Durant, Oklahoma, Appellant,
v.
O.J. Osborn and Roma Lou Osborn, Appellees.
Kenneth G.M. Mather, Trustee for the O.J. Osborn and Roma
Lou Osborn Bankruptcy Estate, Appellant,
v.
O.J. OSBORN and ROMA LOU OSBORN, Appellees.
 Nos. 95-7118, 95-7124, 95-7121.
 United States Court of Appeals, Tenth Circuit.
 April 24, 1996.
 
 Before BRORBY and BARRETT, Circuit Judges, and BRIMMER,** District Judge.
 ORDER AND JUDGMENT[1]
 JAMES E. BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 In appeal No. 95-7118, debtors O.J. and Roma Lou Osborn appeal from a district court order affirming a $9,276.22 bankruptcy court judgment in their favor. In appeal No. 95-7124, creditor Durant Bank & Trust Co. cross-appeals from the same order. In appeal No. 95-7121, Trustee Kenneth G.M. Mather appeals from a district court order reversing a bankruptcy court order insofar as it held a portion of a legal malpractice claim was property of the bankruptcy estate, and affirming the bankruptcy court order insofar as it held the remaining portion of the legal malpractice claim was the Osborns' property. We consolidate these appeals on our own motion, Fed. R.App. P. 3(b), and affirm.
 
 
 3
 The facts pertinent to appeal Nos. 95-7118 and 95-7124 are fully set forth in Osborn v. Durant Bank & Trust Co. (In re Osborn), 24 F.3d 1199, 1201-02 (10th Cir.1994), and will not be repeated. Pursuant to our directive, on remand the bankruptcy court found that the fair market value of the Osborns' Texas property was $27,000, which was the price received at the auction. It concluded that the Bank was entitled to an $11,071.30 offset for amounts consumed by the Osborns as a result of a cash collateral order. It deducted from the sale price the auctioneer's fee of $2,859.72, and taxes in the amount of $3,792.76. It concluded the Osborns should not be allowed to recover the auctioneer fee, or rent and/or storage expenses because they had the option to pay rent to the Bank, but chose not to do so. The bankruptcy court entered judgment of $9,276.22 in favor of the Osborns and against the Bank.
 
 
 4
 Initially, we reject any contention that the bankruptcy court failed to implement the remedy we suggested in In re Osborn, or failed to apply Texas law. We explicitly held that "[w]e do not decide that the Osborns have a definite entitlement to particular equitable or other relief." Id. at 1210. Thus, contrary to the Osborns' assertion, the bankruptcy court was not required to comply with any particular statute. Our statement in In re Osborn, id. at 1204, that "[w]e look to Texas law to determine whether there are remedies available to the Osborns that would not affect the validity of the sale," was made in the context of determining whether the appeal was moot because the Texas property had been sold. It was not intended to require the bankruptcy court to apply any particular statute on remand. In fact, the Texas remedy that we discussed in our opinion was a constructive trust, not the statute relied on by the Osborns. Id.
 
 
 5
 On the other hand, we find no error in the bankruptcy court awarding the Osborns something because it wanted to adhere to our spirit and mandate. While we did not order that they be given something, it is a fair reading of our decision that some relief should be granted if it were possible to fashion a remedy.
 
 
 6
 We also reject the Bank's argument that the bankruptcy court erred in entering the judgment against only the Bank when there were other parties who received some of the funds from sale of the Osborns' Texas home, and when the trustee, not the Bank, conducted the sale. We held that the bankruptcy court could grant the Osborns monetary relief from the party that received the proceeds of the sale. Id. at 1209. As the Bank directed the sale and received proceeds from the sale, we conclude it was equitable to enter judgment solely against the Bank.
 
 
 7
 The Osborns claim the bankruptcy court's finding concerning the fair market value of the Texas property was clearly erroneous because it was based on the price obtained at a forced execution sale. We review the bankruptcy court's findings to determine whether they are clearly erroneous, and we review its legal conclusions de novo. Taylor v. IRS, 69 F.3d 411, 415 (10th Cir.1995). The bankruptcy court found the fair market value to be the price realized at the auction because the auctioneer advertised the auction, held two inspections, placed advertisements in two newspapers, directly mailed 1,500-2,000 advertisements to potential purchasers, and had a brochure printed describing the house; over fifty people attended the auction; and there were approximately twenty-two registered bidders.
 
 
 8
 The Osborns contend the bankruptcy court erred by relying on the holding in BFP v. RTC, 114 S.Ct. 1757, 1765 (1994), that a "reasonably equivalent value" for foreclosed property is "the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." They argue the case actually stands for the proposition that fair market value "is the very antithesis of forced-sale value," id. at 1761, which does not support the bankruptcy court's finding as to fair market value.
 
 
 9
 We agree BFP does not support a conclusion that the price received at a foreclosure sale constitutes the fair market value of the property. BFP was concerned with the definition of one of the factors listed in 11 U.S.C. 548 for determining whether a transfer can be avoided as fraudulent: whether the debtor received less than a "reasonably equivalent value" in exchange for the transfer. In holding that the price received at a foreclosure sale constitutes "reasonably equivalent value," the Court declined to equate "reasonably equivalent value" with fair market value. 114 S.Ct. at 1765.
 
 
 10
 Nevertheless, we find no reversible error. The Court in BFP made clear that its opinion covers only mortgage foreclosures of real estate: "considerations bearing upon other foreclosures and forced sales ... may be different." Id. at 1761 n. 3. The price brought at a bankruptcy trustee's sale can be considered in determining fair market value. Mizell v. Phillips, 240 F.2d 738, 741 (5th Cir.1957); United States v. Standard Milling Co. (In re Standard Milling Co.), 324 F.Supp. 386, 389 (N.D.Tex.1970). We conclude the finding as to the fair market value of the Texas property is not clearly erroneous or otherwise in error.
 
 
 11
 The next contention is that the bankruptcy court erroneously redetermined the question whether the Osborns were estopped from claiming the Texas residence as their homestead. While the bankruptcy court did discuss the estoppel issue, it concluded that the Osborns cannot be estopped. We conclude the bankruptcy court's actions on remand were not contrary to our decision in In re Osborn.
 
 
 12
 The Osborns contend the bankruptcy court erred in deducting $11,071.30 from their award for the cash collateral order.[2] They maintain our ruling in In re Osborn, that they were entitled to homestead rights in the Texas property, precludes this offset. To the extent they read our decision as holding they were entitled to the full fair market value of their house with no deduction, that reading is erroneous. Rather, we left the determination of relief to the bankruptcy court's discretion. 24 F.3d at 1209, 1210. The bankruptcy court's order therefore did not violate our mandate in In re Osborn.
 
 
 13
 The Osborns further contend the cash collateral order imposed a void lien against a homestead under Tex. Const. art. 16, 50, which they may collaterally attack in this proceeding. However, the bankruptcy court did not enforce the lien. Rather, it ordered that the Bank was entitled to an offset of $11,071.30 because this was the amount of cash collateral that the Osborns had consumed. We conclude the bankruptcy court did not err in considering the amount of cash collateral the Osborns had consumed in fashioning a remedy for them.
 
 
 14
 The Bank contends that it should have been granted a $24,000 rather than a $11,071.30 offset from the Osborns' award because the amount it lost due to the Osborns' use of cash collateral was at least $24,000. It relies on the testimony of its vice president, Gary Forbis, that the Bank lost at least $24,000 as a result of the use of the cash collateral. Forbis's testimony was based on Mr. Osborn's testimony that the value of the Osborns' cattle when the cash collateral order was entered was $94,000, and the fact that the cattle sold for only around $70,000. Appendix of Appellant/Cross-Appellee Durant Bank & Trust Co. Vol. II, doc. 45 at 236-37.
 
 
 15
 Mr. Osborn actually testified that he thought the value of the cattle was around $94,000, but he was not sure. He accepted whatever value the appraiser stated in his report. Appellants O.J. and Roma Lou Osborns' App. Vol. II, doc. 22 at 140. However, that report was not entered in evidence. Thus, the evidence as to the Bank's alleged loss of $24,000 is not as clear as the Bank asserts. In any event, if the Bank were granted an offset of $24,000, the Osborns would not receive any relief, contrary to the bankruptcy court's intent. We conclude the offset granted to the Bank is not erroneous.
 
 
 16
 The Osborns argue there was no evidence the cash proceeds were not used to benefit their farming operation. However, the Bank suffered a diminution in the value of its collateral for which the bankruptcy court could compensate it.
 
 
 17
 Finally, the Osborns contend the bankruptcy court erred in denying their request for rent and storage expenses. We conclude this decision was well within the bankruptcy court's discretion. We have carefully considered the remaining issues and find them to be without merit.
 
 
 18
 We turn to appeal No. 95-7121. In December 1991, the Osborns filed a legal malpractice action against their former attorney, Richard Lerblance, in Oklahoma state court, alleging his negligence caused them 1) to fail to claim their unmortgaged home as a homestead, which would have exempted it from liquidation; and 2) to enter into an agreed in personam judgment with the Bank that made $225,000 of their debts nondischargeable. Nearly three years later, the bankruptcy trustee moved to have the claim turned over to the bankruptcy estate pursuant to 11 U.S.C. 542.
 
 
 19
 The bankruptcy court found that that portion of the claim against Lerblance relating to entry of the $225,000 judgment was property of the estate. However, any recovery for the part of the claim relating to loss of the Osborns' homestead exemption would itself be exempt and thus was property of the Osborns. Finally, the bankruptcy court found the trustee did not abandon the legal malpractice claim.
 
 
 20
 The district court reversed the bankruptcy court's order concerning the part of the legal malpractice claim relating to the $225,000 judgment, concluding the claim was not property of the estate but rather was the Osborns' property. Further, it held the bankruptcy court's finding that the trustee had not abandoned the claim was clearly erroneous. It otherwise affirmed the bankruptcy court. The consequence of the district court's order was that the entire legal malpractice claim was property of the Osborns.
 
 
 21
 Pursuant to 11 U.S.C. 541(a)(1), property of the estate generally consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." Property acquired by the debtor after the commencement of the case belongs to the debtor. Casey v. Hochman, 963 F.2d 1347, 1350 (10th Cir.1992). However, "[a]ny interest in property that the estate acquires after the commencement of the case" is property of the estate. 11 U.S.C. 541(a)(7). Thus, the issue is whether the Osborns' legal malpractice claim, which arose after the commencement of the bankruptcy case, is an interest in property that the estate acquired. If not, it is the debtors' property. Further, if any portion of the claim is exempt, 11 U.S.C. 522(b), then it also is the debtors' property.
 
 
 22
 Turning to the exemption question first, we apply the holding of Haaland v. Corporate Management, Inc., 172 B.R. 74, 79 (S.D.Cal.1989), and conclude that that portion of the legal malpractice claim seeking to recover for loss of the Osborns' homestead exemption would, itself, be exempt. As was the case in Haaland, id. at 78, relevant state law allows for the reinvestment of proceeds from a homestead within six months after the sale thereof, Tex. [Prop.] Code Ann. 41.001(c), and recognizes that proceeds of an insurance policy on a homestead are exempt, Willis v. Schoelman, 206 S.W.2d 283, 284 (Tex.Civ.App.1947). And, as in Haaland, 172 B.R. at 78, the state homestead exemption is given a liberal construction favoring the debtor. Bayless v. Guthrie, 235 S.W. 843, 846 (Tex.Civ.App.1921). As the Haaland court observed, "[t]he loss of the homestead through the foreclosure caused by the attorney's negligence is just as real a loss to the homeowner as if the homestead had simply burned down by fire." Haaland, 172 B.R. at 79.
 
 
 23
 No statute would exempt the proceeds that might be recovered for Lerblance's negligence in having the $225,000 judgment entered against the Osborns. Thus, we turn to whether this portion of the legal malpractice claim is property that the estate acquired.
 
 
 24
 The trustee contends that this portion of the legal malpractice claim is property the estate acquired because Lerblance was representing the Chapter 11 bankruptcy estate at the time of the alleged malpractice. He relies on In re Griseuk, 165 B.R. 956, 959 (Bankr.M.D.Fla.1994), and other cases holding that a debtor's tort claim acquired after the filing of a Chapter 11 petition is property of the estate. This holding was based on the view that, because the debtor and debtor-in-possession in a Chapter 11 case are the same, all property interests acquired after the filing of the Chapter 11 petition are the estate's, except those expressly excluded under 11 U.S.C. 541(a)(6). 165 B.R. at 959. This view is at odds with our decision in Casey that 541(a)(6) is actually an exception to the general rule that post-petition acquisitions are property of the debtor. 963 F.2d at 1351.
 
 
 25
 In Oklahoma, one of the necessary elements of a legal malpractice claim is that the attorney's negligence was the proximate cause of an injury to the plaintiff. Allred v. Rabon, 572 P.2d 979, 981 (Okla.1977). Lerblance's alleged negligence caused a $225,000 judgment to be entered against the Osborns personally. His negligence did not harm the estate. The legal malpractice action seeks to recover for injury to the Osborns personally, not for injury to the estate, and therefore is more appropriately considered property of the Osborns than of the estate. Cf. In re Doemling, 127 B.R. 954, 956 (W.D.Pa.1991).
 
 
 26
 Granted, another element of an Oklahoma legal malpractice claim is the existence of an attorney-client relationship. Haney v. Oklahoma, 850 P.2d 1087, 1089 (Okla.1993). The bankruptcy court made a legal conclusion that Lerblance represented the debtors-in-possession, not the Osborns personally. However, the record indicates the Osborns testified at a 2004 examination that they considered Lerblance to be their attorney in the negotiations leading to entry of the $225,000 judgment. Appellees' Supp.App. at 11, 38. In fact, Lerblance signed the agreed journal entry of judgment that has given rise to the malpractice claim as "Attorney for Debtors." Id. at 3. Further, a May 23, 1990, order of the bankruptcy court found that "[t]he Debtors were represented throughout these proceedings by counsel, Richard C. Lerblance." Appellant's App. at 43. Lerblance filed an amended final report on September 26, 1989, in which he called himself "attorney for the debtors herein." Id. at 62. Finally, we noted in In re Osborn, 24 F.3d at 1201 n. 3, that Lerblance had entered an appearance for the debtor, Mr. Osborn, at a meeting of creditors. Thus, we cannot agree with the bankruptcy court, based on this record, that Lerblance was not acting as the Osborns' attorney when the alleged malpractice occurred. We therefore conclude that the entire legal malpractice claim is the Osborns' property.
 
 
 27
 The judgments of the United States District Court for the Eastern District of Oklahoma are AFFIRMED.
 
 
 
 **
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3
 
 
 [2]
 This order allowed the Osborns to use the cash proceeds from the sale of cattle to maintain the cattle herd, and granted the Bank adequate protection for use of the cash collateral in the form of a post-petition lien against the Texas property in the amount of $11,071.30. Appendix of Appellant/Cross-Appellee Durant Bank & Trust Co. Vol. I, doc. 17